1   Jennifer Stisa Granick (CA Bar No. 168423)
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
2   39 Drumm Street, San Francisco, CA  94103
    T: 415.343.0758
3   jgranick@aclu.org

4   Brett Max Kaufman
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
5   125 Broad Street, 18th Floor, New York, NY 10004
    T: 212.549.2603
6   F: 212.549.2654
    bkaufman@aclu.org

7
    *Attorneys for Movants American Civil Liberties Union & American Civil Liberties Union
8   Foundation**

9   *Additional counsel for all Movants listed on signature page below.*

10                  **UNITED STATES DISTRICT COURT**

11                  **EASTERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| IN RE U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK TO PROVIDE TECHNICAL ASSISTANCE IN SEALED CASE, OPINION AND ORDER ISSUED IN OR ABOUT SEPTEMBER 2018 | Misc. No. ___<br><br>**Motion to Unseal Court Records Concerning U.S. Department of Justice Motion to Compel Facebook** |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................iii

I.      Preliminary Statement.................................................................................... 1

II.     Factual Background ......................................................................................... 2

III.    Jurisdiction.................................................................................................... 7

IV.     Argument ...................................................................................................... 8

        A.      Movants have standing to bring this motion........................................ 8

        B.      Both the First Amendment and common law require unsealing the docket sheet
                and ruling related to the Justice Department's attempt to access Facebook
                Messenger. ...................................................................................... 8

                1.      The public has a First Amendment right of access to court records........... 9

                        a.      The First Amendment requires the release of the court's sealed
                                ruling and legal reasoning. ........................................... 10

                                (i)     Our legal system is built on a tradition of access to judicial
                                        decisions................................................................ 10

                                (ii)    Logic demands that the public have access to this judicial
                                        decision. ................................................................ 12

                        b.      The public's constitutional right of access applies to the docket
                                sheet. ................................................................... 14

                                (i)     There is a "centuries-long" tradition of access to docket
                                        sheets..................................................................... 15

                                (ii)    Logic demands public docket sheets................................ 16

                2.      The common law also requires unsealing the docket sheet and ruling..... 18

                        a.      There is a common law right to judicial rulings. ......................... 19

                        b.      There is a common law right to docket sheets........................... 19

                        c.      There is good cause for unsealing the docket sheet and ruling
                                under the Wiretap Act. ............................................. 20

d.    The government cannot articulate a compelling interest that outweighs the public's right of access and show that sealing the entire record is a tailored means of accommodating that interest...................................................................... 21

V.    CONCLUSION.......................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Banks & Bros. v. W. Pub. Co.*,
  27 F. 50 (C.C.D. Minn. 1886) ................................................................. 15

*Banks v. Manchester*,
  128 U.S. 244 (1888) ........................................................................ 11

*Cal. First Amendment Coal. v. Woodford*,
  299 F.3d 868 (9th Cir. 2002) ................................................................ 22

*CBS, Inc. v. U.S. Dist. Court*,
  765 F.2d 823 (9th Cir. 1985) ............................................................. 9, 14

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................... 7

*Cheek v. United States*,
  498 U.S. 192 (1991) ........................................................................ 10

*Co. Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ........................................................ passim

*Code Revision Comm'n v. Public.Resource.Org, Inc.*,
  906 F.3d 1229 (11th Cir. 2018) ........................................................... 11

*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ................................................................ 9

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) ............................................................ 19

*Doe v. Exxon Mobil Corp.*,
  570 F. Supp. 2d 49 (D.D.C. 2008) ........................................................ 10

*Encyclopedia Brown Prods. v. Home Box Office*,
  26 F. Supp. 2d 606 (S.D.N.Y. 1998) ...................................................... 13

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ........................................................ 18, 22

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) ......................................................... 14, 18

*Gentile v. State Bar of Nev.*,
  501 U.S. 1030 (1991) ....................................................................... 12

*Globe Newspaper Co. v. Fenton*,
  819 F. Supp. 89 (D. Mass. 1993) ......................................................... 16

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) ................................................................. 8, 15, 21

*Hagestad v. Tragesser,*
  49 F.3d 1430 (9th Cir. 1995) ................................................................. 22

*Hartford Courant Co. v. Pellegrino,*
  380 F.3d 83 (2d Cir. 2004) ................................................... 15, 16, 17, 19

*In re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things From [Redacted],*
  No. BR 06-05 (F.I.S.C. May 24, 2006) ................................................... 23

*In re Certification of Questions of Law to Foreign Intelligence Surveillance Court of Review,*
  No. FISCR 18-01, 2018 WL 2709456 (F.I.S.C.R. Mar. 16, 2018) ........................................... 8

*In re Globe Newspaper,*
  729 F.2d 47 (1st Cir. 1984) ................................................................. 22

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders,*
  300 F. Supp. 3d 61 (D.D.C. 2018) ......................................................... 17

*In re N.Y. Times Co.,*
  577 F.3d 401 (2d Cir. 2009) ............................................................... 21

*In re N.Y. Times Co.,*
  828 F.2d 110 (2d Cir. 1987) ........................................................... 21, 22

*In re Orion Pictures Corp.,*
  21 F.3d 24 (2d Cir. 1994) ................................................................. 13

*In re Phenylpropanolamine Prods. Liab. Litig.,*
  MDL No. 1407, 2003 WL 23867343 (W.D. Wash. Mar. 10, 2003) ...................................... 10

*In re Sealed Docket Sheet Associated with Malware Warrant Issued on July 22, 2013,*
  No. 16-cv-3029 (D. Md. Nov. 4, 2016) ................................................... 18

*In re Search Warrant,*
  855 F.2d 569 (8th Cir. 1988) ............................................................. 15

*In re Wash. Post Co.,*
  807 F.2d 383 (4th Cir. 1986) ............................................................. 22

*Kamakana v. City and Cty. of Honolulu,*
  447 F.3d 1172 (9th Cir. 2006) ..................................................... 9, 18, 19, 22

*Lowenschuss v. West Pub. Co.,*
  542 F.2d 180 (3d Cir. 1976) .............................................................. 12

*Marbury v. Madison,*
  5 U.S. (1 Cranch) 137 (1803) ............................................................. 10

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.,*
  684 F.3d 286 (2d Cir. 2012) .............................................................. 21

*Nash v. Lathrop,*
  6 N.E. 559 (Mass. 1886) ............................................................... 11, 14

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

iv

*Nixon v. Warner Commc'ns,*
    435 U.S. 589 (1978)..................................................................................... 7, 8

*Oliner v. Kontrabecki,*
    745 F.3d 1024 (9th Cir. 2014) ................................................................... 22

*Oregonian Publ'g. Co. v. U.S. Dist. Court,*
    920 F.2d 1462 (9th Cir. 1990) ..................................................................... 9

*Penny v. Little,*
    4 Ill. (3 Scam.) 301 (1841) ......................................................................... 12

*PepsiCo v. Redmond,*
    46 F.3d 29 (7th Cir. 1995) ......................................................................... 14

*Perez-Guerrero v. U.S. Att'y Gen.,*
    717 F.3d 1224 (11th Cir. 2013) ................................................................. 19

*Phoenix Newspapers, Inc. v. U.S. Dist. Court,*
    156 F.3d 940 (9th Cir. 1998) ................................................................. 9, 19

*Press-Enter. Co. v. Superior Court,*
    478 U.S. 1 (1986) ............................................................................... passim

*Prod. Res. Grp. v. Martin Prof'l,*
    907 F. Supp. 2d 401 (S.D.N.Y. 2012)...................................................... 10

*Republic of Phil. v. Westinghouse Elec. Corp.,*
    949 F.2d 653 (3d Cir. 1991) ....................................................................... 13

*Richmond Newspapers v. Virginia,*
    448 U.S. 555 (1980) ............................................................................... 8, 16

*Seattle Times Co. v. U.S. Dist. Court,*
    845 F.2d 1513 (9th Cir. 1988) ..................................................................... 9

*Sheppard v. Maxwell,*
    384 U.S. 333 (1966)..................................................................................... 8

*Union Oil Co. v. Leavell,*
    220 F.3d 562 (7th Cir. 2000) ............................................................... 11, 13

*United States v. Aguilar,*
    No. 15-cr-41-GEB, 2017 WL 5461362 (E.D. Cal. Nov. 13, 2017)........... 17

*United States v. Appelbaum,*
    707 F.3d 283 (4th Cir. 2013) ..................................................................... 17

*United States v. Bus. of the Custer Battlefield Museum,*
    658 F.3d 1188 (9th Cir. 2011) ............................................................. 21, 23

*United States v. Higuera-Guerrero (In re Copley Press, Inc.),*
    518 F.3d 1022 (9th Cir. 2008) ............................................................... 9, 12

*United States v. Index Newspapers LLC*,
   766 F.3d 1072 (9th Cir. 2014) .................................................... 11, 15

*United States v. Kwok Cheung Chow*,
   No. 14-cr-196, 2015 WL 5094744 (N.D. Cal. Aug. 28, 2015) ............... 21

*United States v. Mendoza*,
   698 F.3d 1303 (10th Cir. 2012) ....................................................... 15

*United States v. Ochoa-Vasquez*,
   428 F.3d 1015 (11th Cir. 2005) ................................................. 14, 15

*United States v. Peters*,
   754 F.2d 753 (7th Cir. 1985) ......................................................... 22

*United States v. Valenti*,
   987 F.2d 708 (11th Cir. 1993) ....................................................... 15

*Valley Broad. Co. v. United States Dist. Court*,
   798 F.2d 1289 (9th Cir. 1986) ..................................................... 9, 19

*Wheaton v. Peters*,
   33 U.S. (8 Pet.) 591 (1834) ............................................................ 11

*Wood v. Ryan*,
   759 F.3d 1076 (9th Cir. 2014) ......................................................... 9

### Statutes

18 U.S.C. § 2518(4) ............................................................................ 4

18 U.S.C. § 2518(8)(b) ................................................................. 8, 20

28 U.S.C. § 1651(a) ........................................................................... 4

50 U.S.C. § 1872 .............................................................................. 24

USA FREEDOM Act, H.R. 2048, 114th Cong. § 402 (2015) ..................... 24

### Other Authorities

1 William Blackstone, *Commentaries* *69–74 ......................................... 11

Albert Gidari, *Wiretap Numbers Don't Add Up*, Just Security, July 6, 2015 .............................. 20

Amy Davidson Sorkin, *The Dangerous All Writs Act Precedent in the Apple Case*,
   New Yorker, Feb. 19, 2016 ............................................................... 4

Andy Greenberg, *Hacker Lexicon: What is End-to-End Encryption?*, Wired, Nov. 25, 2014 ....... 2

Ben Lovejoy, *Apple Opposing Australian Encryption Law Which Could Set a Precedent
   for the USA*, 9to5Mac, Oct. 3, 2018 ................................................... 7

Benjamin N. Cardozo, *The Nature of the Judicial Process* 20 (1963) ........................ 12

Chaim Gartenberg, *Facebook Reportedly Avoids US Government Wiretap of Messenger Voice Calls*, Verge, Sept. 28, 2018 ................................................................................ 4

Chris Welch, *US Reportedly Pressuring Facebook to Break Messenger's Encryption Over MS-13 Investigation*, Verge, Aug. 17, 2018 ................................................................... 5

Christopher Wray, Director, FBI, Remarks at Fordham University-FBI International Conference on Cyber Security: Raising Our Game: Cyber Security in an Age of Digital Transformation (Jan. 9, 2018)........................................................................................................... 7

Dan Levine & Joseph Menn, *U.S. Government Seeks Facebook Help to Wiretap Messenger*, Reuters, Aug. 17, 2018 ............................................................................................... 1, 3

David E. Sanger & Brian X. Chen, *Signaling Post-Snowden Era, New iPhone Locks Out N.S.A.*, N.Y. Times, Sept. 26, 2014 ......................................................................................... 5

Ellen Nakashima, *Facebook Wins Court Battle Over Law Enforcement Access to Encrypted Phone Calls*, Wash. Post (Sept. 28, 2018) ............................................................. passim

Eric Lichtblau & Katie Benner, *Apple Fights Order to Unlock San Bernardino Gunman's iPhone*, N.Y. Times, Feb. 17, 2016 ...................................................................... 5

Greg Nojeim, Eric Wenger & Marc Zwillinger, *FBI vs. Facebook Messenger: What's at Stake?*, Ars Technica, Oct. 2, 2018 ....................................................................................... 4

James R. Clapper, DNI Clapper Declassifies Intelligence Community Documents Regarding Collection Under Section 501 of the Foreign Intelligence Surveillance Act (FISA), IC on the Record (Sept. 10, 2013) ........................................................................................... 23

Joseph Menn & Dan Levin, *In Test Case, U.S. Fails to Force Facebook to Wiretap Messenger Calls*, Reuters, Sept. 28, 2018 .................................................................. 1, 3, 4, 10

Katie Benner & Eric Lichtblau, *U.S. Says It Has Unlocked iPhone Without Apple*, N.Y. Times, Mar. 28, 2016 ............................................................................................ 6

Krysia Lenzo, *Facebook Avoids U.S. Government Wiretap of Encrypted Messenger Phone Calls*, Fox News, Oct. 1, 2018............................................................................. 3

Open Letter from Apple CEO Tim Cook, A Message to Our Customers, Feb. 16, 2016 ............. 6

Press Release, Sen. Dianne Feinstein, Intelligence Committee Leaders Release Discussion Draft of Encryption Bill (Apr. 13, 2016)............................................................ 7

Russell Brandom, *Facebook's Encryption Fight Will Be Harder Than San Bernardino*, Verge, Aug. 20, 2018............................................................................................. 5

Sean Kelly, *Messenger's 2017 Year in Review*, Facebook (Dec. 13, 2017).............................. 3, 7

Staff of the H. Judiciary Comm. & H. Energy & Commerce Comm., 114th Cong., Encryption Working Group Year-End Report (2016) ...................................................... 7

Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*,
   3 Fed. Cts. L. Rev. 177 (2009)................................................................... 11

Tim Cushing, *DOJ Loses Another Attempt to Obtain Encryption-Breaking Precedent
   in Federal Court*, Techdirt, Oct. 2, 2018 ................................................. 3

Tom McKay, *Facebook Reportedly Defeats Government Demand to Wiretap Messenger
   Calls*, Gizmodo, Sept. 29, 2018 ............................................................. 4

Zack Whittaker, *US Government Loses Bid to Force Facebook to Wiretap Messenger
   Calls*, TechCrunch, Sept. 28, 2018 ......................................................... 4

**Rules**

Local Rule 141(d) (E.D. Cal. 2018)............................................................. 10

Local Rule 141(f) (E.D. Cal. 2018) ............................................................ 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# NOTICE OF MOTION AND MOTION

The American Civil Liberties Union, the American Civil Liberties Union Foundation, the American Civil Liberties Union of Northern California, the American Civil Liberties Union Foundation of Northern California (together, the "ACLU"); the Electronic Frontier Foundation ("EFF"); and Riana Pfefferkorn, Associate Director of Surveillance and Cybersecurity at Stanford Law School's Center for Internet and Society (in her personal capacity) respectfully move this Court to unseal any sealed docket sheets and any sealed judicial rulings associated with a U.S. Department of Justice motion to hold Facebook in contempt of court, which reportedly was heard on August 14, 2018.[1]

## I.    Preliminary Statement

Whether and how the government can compel internet communications platforms to modify their technology to enable surveillance against their users is a topic of vigorous public debate. In August 2018, Reuters broke the story that the Justice Department sought to compel Facebook to enable investigators to wiretap encrypted voice calls made on its Facebook Messenger app ("Messenger"), then hold Facebook in contempt of court when it refused to comply. *See* Dan Levine & Joseph Menn, *U.S. Government Seeks Facebook Help to Wiretap Messenger*, Reuters, Aug. 17, 2018, https://perma.cc/MM9M-C2XU (hereinafter "Reuters, Aug. 17, 2018"); Joseph Menn & Dan Levin, *In Test Case, U.S. Fails to Force Facebook to Wiretap Messenger Calls*, Reuters, Sept. 28, 2018, https://perma.cc/R532-3QDV (hereinafter "Reuters, Sept. 28, 2018"). Reuters and the *Washington Post* reported that this Court then issued a "sealed ruling" or "decision" on the contempt motion. *See* Reuters, Sept. 28, 2018; Ellen Nakashima, *Facebook Wins Court Battle Over Law Enforcement Access to Encrypted Phone Calls*, Wash. Post (Sept. 28, 2018), https://perma.cc/29FP-5KTD (hereinafter "Wash. Post, Sept. 28, 2018"). To Movants' knowledge, no public docket sheet recording these proceedings exists.

---

[1] Movants would like to thank Kara V. Brandeisky and Kristin M. Mulvey, students in the Technology Law & Policy Clinic at NYU School of Law, for their contributions to this brief.

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

The public has First Amendment and common-law rights of access to court records. This Court should therefore unseal the following:

- any sealed docket sheets;

- any court orders on sealing requests;

- any judicial rulings associated with the aforementioned proceedings; and

- any legal analysis presented in government submissions incorporated, adopted, or rejected implicitly or explicitly in such judicial rulings.

Narrowly tailored redactions can be made to prevent disclosure of any information that should properly remain under seal. In sum, Movants request the docket sheet and the Court's legal analysis.

## II.     Factual Background

The documents sought through this motion arise from a reported government effort to wiretap private communications that are ordinarily inaccessible to anyone but the individuals who participated in the conversation. News reports suggest that the government sought a court order compelling Facebook to redesign its systems to permit government access to private voice calls. The government's request in this matter is the latest in a years-long effort by the Department of Justice to undermine technology providers' use of various kinds of encryption to protect individual users' privacy. It comes amidst a long-running public debate on the wisdom and legality of government surveillance and decryption efforts, and is a matter of preeminent public concern.

This case reportedly involves "end-to-end" encryption. End-to-end encryption is "a system of communication where the only people who can read the messages are the people communicating." Andy Greenberg, *Hacker Lexicon: What is End-to-End Encryption?*, Wired, Nov. 25, 2014, https://perma.cc/4M2R-PCD3. End-to-end encryption differs from other encryption architectures in that the communications service provider does not have access to the "keys" necessary to decrypt the conversations, and thus lacks the technical capability to respond to government requests to intercept or otherwise disclose the contents of the conversation. *Id.* For

decades, but particularly over the past several years, there has been an intense public debate about the role of encryption in cybersecurity and privacy. In particular, the debate has focused on whether the government should undermine the privacy and security interests of individuals in safeguarding their personal communications in order to further the public interest in efficient law enforcement. Facebook has claimed that the company does not have ability to provide unencrypted voice data for calls made over its Messenger service. Against this backdrop, several news outlets reported that in sealed proceedings this past summer, the Department of Justice tried to compel Facebook to break the end-to-end encryption of voice calls on its Messenger app.

Journalists first reported the existence of the dispute between Facebook and the Department of Justice on August 17, 2018. *See* Reuters, Aug. 17, 2018. According to Reuters, the government sought a "wiretap of ongoing voice conversations by one person on Facebook Messenger," pursuant to an investigation against alleged members of the international MS-13 criminal gang. *Id.* In response, Facebook reportedly argued that Messenger calls are end-to-end encrypted and compliance with the request would require Facebook to rewrite the Messenger app's code and undermine its encryption for all its users. *Id.*[2] The *Washington Post* reported that Facebook further argued that its Messenger app isn't covered by the statute that authorized the wiretap order. *See* Wash. Post, Sept. 28, 2018. As a result, Facebook reportedly refused to comply, and the Justice Department moved for an order to show cause why Facebook should not be held in contempt of court. *Id.* Reuters reported that a judge in this Court heard arguments about the government's motion on August 14, 2018. *See* Reuters, Sept. 28, 2018.

In early October, news outlets widely reported that the court had denied the Justice Department's motion in a sealed opinion.[3] However, neither the government's legal argument

---

[2] Currently there are 1.3 billion users of Messenger. Sean Kelly, *Messenger's 2017 Year in Review*, Facebook (Dec. 13, 2017), https://perma.cc/WN9B-B6AQ (hereinafter "Messenger's 2017 Year in Review").

[3] *See* Reuters, Sept. 28, 2018; Wash. Post, Sept. 28, 2018; *see also* Tim Cushing, *DOJ Loses Another Attempt to Obtain Encryption-Breaking Precedent in Federal Court*, Techdirt, Oct. 2, 2018, https://perma.cc/5RD6-Z6SH; Krysia Lenzo, *Facebook Avoids U.S. Government Wiretap of Encrypted Messenger Phone Calls*, Fox News, Oct. 1, 2018, https://perma.cc/4TBG-3L75;

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

nor the judge's legal basis for rejecting the government's motion has ever been made public. *See* Reuters, Sept. 28, 2018 ("The details of his reasoning were not available."). Nor have even the basic contours of the government's request ever been confirmed. *See* Gizmodo, Sept. 29, 2018 ("Many details about what exactly the government was seeking are unclear.").[4] Nevertheless, the Justice Department proceeded to charge sixteen suspected MS-13 gang members, attaching an affidavit from an FBI agent that said in a footnote, "currently, there is no practical method available by which law enforcement can monitor" calls on Messenger. *See* Reuters, Sept. 28, 2018; Crim. Compl. at 31–32 n.20, *USA v. Barrera-Palma et al.*, No. 18-mj-150 (E.D. Cal. Aug. 29, 2018), ECF No. 20.

There is a strong public interest in knowing which law has been interpreted, and how it has been interpreted. *See, e.g.*, Greg Nojeim, Eric Wenger & Marc Zwillinger, *FBI vs. Facebook Messenger: What's at Stake?*, Ars Technica, Oct. 2, 2018, https://perma.cc/5UGD-2U9S (arguing that use of the Wiretap Act in this case would be "a dramatic expansion of the government's authority to commandeer services in ways that interfere with their expected use"); Amy Davidson Sorkin, *The Dangerous All Writs Act Precedent in the Apple Case*, New Yorker,

---

Tom McKay, *Facebook Reportedly Defeats Government Demand to Wiretap Messenger Calls*, Gizmodo, Sept. 29, 2018, https://perma.cc/6BWW-7D48 (hereinafter "Gizmodo, Sept. 29, 2018"); Chaim Gartenberg, *Facebook Reportedly Avoids US Government Wiretap of Messenger Voice Calls*, Verge, Sept. 28, 2018, https://perma.cc/WK9J-FJWE (hereinafter "Verge, Sept. 28, 2018"); Zack Whittaker, *US Government Loses Bid to Force Facebook to Wiretap Messenger Calls*, TechCrunch, Sept. 28, 2018, https://perma.cc/PB4H-YT45.

[4] Based on the limited and unverified information available, it appears the government may have sought a technical assistance order under the Wiretap Act. *See* 18 U.S.C. § 2518(4) (requiring "a provider of wire or electronic communication service" to comply with an order to furnish "technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services"); Wash. Post, Sept. 28, 2018 (explaining Facebook argued the government's request would "exceed the Wiretap Act's 'technical assistance' provision"). However, it is also possible the government sought an All Writs Act order, as it has in previous cases. *See* 28 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

Feb. 19, 2016, https://perma.cc/K46W-FXGQ (calling use of the All Writs Act to order

decryption "fairly novel").

Almost universally, reporting and commentary about these sealed proceedings drew

comparisons to the 2016 controversy surrounding the FBI and the encryption methods on Apple

iPhones. *See, e.g.*, Wash. Post, Sept. 28, 2018; Russell Brandom, *Facebook's Encryption Fight*

*Will Be Harder Than San Bernardino*, Verge, Aug. 20, 2018, https://perma.cc/BZ7F-NTSK;

Chris Welch, *US Reportedly Pressuring Facebook to Break Messenger's Encryption Over MS-*

*13 Investigation*, Verge, Aug. 17, 2018, https://perma.cc/XXB4-TYS4. In 2014, Apple created

new full-disk encryption[5] methods that would make it impossible for the company to bypass the

passcode on its iPhones and hand over iPhone data in response to government requests. *See*

David E. Sanger & Brian X. Chen, *Signaling Post-Snowden Era, New iPhone Locks Out N.S.A.*,

N.Y. Times, Sept. 26, 2014, https://perma.cc/PQ35-DWPG. This encryption feature became the

subject of considerable national debate when the Department of Justice publicly filed a motion to

compel Apple to help the FBI unlock an iPhone belonging to the gunman accused of killing

fourteen people in San Bernardino, California.[6] *See* Government's Motion to Compel Apple Inc.

to Comply With This Court's February 16, 2016 Order Compelling Assistance in Search, *In the*

*Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a*

*Black Lexus IS300, California License Plate 35KGD203* (*In the Matter of the Search of an Apple*

*iPhone*), No. 16-cm-10-SP (C.D. Cal. Feb. 19, 2016), ECF No. 1; *see also* Eric Lichtblau &

Katie Benner, *Apple Fights Order to Unlock San Bernardino Gunman's iPhone*, N.Y. Times,

Feb. 17, 2016, https://perma.cc/LB5S-U4FP.

In response to the litigation, Apple CEO Tim Cook published an open letter explaining

that Apple believed complying with the court order would necessarily undermine data security

---

[5] The FBI–Apple dispute involved full-disk encryption—that is, encryption of data stored on a device—rather than end-to-end encrypted communications like those at issue here.

[6] The government also filed requests in other jurisdictions seeking data from locked iPhones. *See* Jenna McLaughlin, *New Court Filing Reveals Apple Faces 12 Other Requests to Break Into Locked iPhones*, Intercept, Feb. 23, 2016, https://perma.cc/X5LX-RTMA.

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO
COMPILE FACEBOOK

for all customers. *See* Open Letter from Apple CEO Tim Cook, A Message to Our Customers, Feb. 16, 2016, https://perma.cc/5JBK-5ZHT. Apple actively resisted the government's demand in public court proceedings. *See* Apple Inc.'s Motion to Vacate Order Compelling Apple Inc. to Assist Agents in Search, and Opposition to Government's Motion to Compel Assistance, *In the Matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Feb. 25, 2016), ECF No. 16.

While the FBI ultimately found a third party to unlock the San Bernardino suspect's iPhone and dropped its case against Apple, *see* Katie Benner & Eric Lichtblau, *U.S. Says It Has Unlocked iPhone Without Apple*, N.Y. Times, Mar. 28, 2016, https://perma.cc/BKB4-XTTE, the FBI–Apple dispute became part of a larger debate about the role of encryption and law-enforcement efforts to circumvent it. Over seventy groups and individuals filed amicus briefs in the case. For example, public interest organizations such as the ACLU, the EFF, and the Center for Democracy and Technology filed in support of Apple.[7] Major internet companies including Amazon, Google, and Facebook also supported Apple's decision to protect its customers' privacy.[8] The government position garnered the support of the California Police Chiefs' Association,[9] among others. In short, the Apple–FBI case concerned a major legal and policy debate.

Congress also took note. The 114th session convened several hearings about encryption.[10] Senator Dianne Feinstein drafted—but never formally introduced—a bill that

---

[7] *See* Br. of Amici Curiae American Civil Liberties Union et al., *In the Matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Mar. 3, 2016), ECF No. 57; Br. of Amici Curiae Electronic Frontier Foundation et al., *In the Matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Mar. 3, 2016), ECF No. 60; Br. of the Center for Democracy & Technology as Amicus Curiae, *In the Matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Mar. 3, 2016), ECF No. 43.

[8] *See* Br. of Amici Curiae Amazon.com et al., *In the Matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Mar. 3, 2016), ECF No. 86.

[9] *See* Br. of Amici Curiae, *In the matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Mar. 3, 2016), ECF No. 90.

[10] *See The Encryption Tightrope: Balancing Americans' Security and Privacy: Hearing Before the H. Comm. on the Judiciary*, 114th Cong. (2016); *Encryption and Cyber Matters: Hearing*

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

would require companies to decrypt customers' data in response to a court order. *See* Press Release, Sen. Dianne Feinstein, Intelligence Committee Leaders Release Discussion Draft of Encryption Bill (Apr. 13, 2016), https://perma.cc/4JH2-NHT4. And a bipartisan working group of both the House Judiciary and House Energy and Commerce Committees published a working group report supporting encryption as a "national interest" and concluding that "this can no longer be an isolated or binary debate." Staff of the H. Judiciary Comm. & H. Energy & Commerce Comm., 114th Cong., Encryption Working Group Year-End Report (2016), https://perma.cc/6PNQ-RCQH.

Today, the debate about the power of law enforcement to undermine encryption and other security measures continues, in the United States and abroad. *See, e.g.*, Ben Lovejoy, *Apple Opposing Australian Encryption Law Which Could Set a Precedent for the USA*, 9to5Mac, Oct. 3, 2018, https://perma.cc/LY4K-TWN9; Christopher Wray, Director, FBI, Remarks at Fordham University-FBI International Conference on Cyber Security: Raising Our Game: Cyber Security in an Age of Digital Transformation (Jan. 9, 2018), https://perma.cc/RBJ5-UJQ7 (calling encryption "an urgent public safety issue"). Some 1.3 billion people around the world use the Facebook Messenger app, making the government's efforts in this matter of extraordinarily broad public concern. *See* Messenger's 2017 Year in Review. But this Court's reasoning about why the government could not force Facebook to break its encryption remains under seal.

### III.    Jurisdiction

The Court has jurisdiction over this motion because "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

---

*Before S. Comm. on Armed Services*, 114th Cong. (2016); *Going Dark: Encryption, Technology, and the Balance Between Public Safety and Privacy: Hearing Before the S. Comm. on the Judiciary*, 114th Cong. (2015); *Counterterrorism, Counterintelligence, and the Challenges of "Going Dark": Hearing Before the Select Comm. on Intelligence*, 114th Cong. (2015).

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

### IV.   Argument

      A.     Movants have standing to bring this motion.

In the Eastern District of California, "[u]pon the motion of any person . . . the Court may, upon a finding of good cause or consistent with applicable law, order documents unsealed." Local Rule 141(f) (E.D. Cal. 2018). Furthermore, generally, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citation omitted); *see also In re Certification of Questions of Law to Foreign Intelligence Surveillance Court of Review*, No. FISCR 18-01, 2018 WL 2709456, at *3 (F.I.S.C.R. Mar. 16, 2018) (holding movants had constitutional standing to bring a right of access claim in the Foreign Intelligence Surveillance Court).

      B.     Both the First Amendment and common law require unsealing the docket sheet and ruling related to the Justice Department's attempt to access Facebook Messenger.

Under both the First Amendment and common law, the public is entitled to access the docket sheet, judicial opinions, and orders associated with the Court's rejection of the Justice Department's motion to compel Facebook to break its encryption on its Messenger app (and any legal arguments submitted by the government that are incorporated, adopted, or rejected implicitly or explicitly in such judicial rulings). There is also good cause for unsealing the materials under the Wiretap Act itself. *See* 18 U.S.C. § 2518(8)(b).

As the Supreme Court has said, "justice cannot survive behind walls of silence." *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966). As a result, "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. "[T]he First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 576 (1980). Access to court documents "helps the public keep a watchful

eye on public institutions and the activities of government." *Valley Broad. Co. v. United States Dist. Court*, 798 F.2d 1289, 1293 (9th Cir. 1986) (citations omitted).

       1.     The public has a First Amendment right of access to court records.

The presumed First Amendment right to access judicial records attaches when the "experience and logic" test is satisfied—that is, (1) when a record has "historically been open to the press and general public" and (2) when "public access plays a significant positive role in the functioning of the particular process." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). When the right attaches, it "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 9.

The Ninth Circuit has explained that "logic alone, even without experience, may be enough to establish the right." *United States v. Higuera-Guerrero* (*In re Copley Press, Inc.*), 518 F.3d 1022, 1026 (9th Cir. 2008). Even without an "unbroken history of public access," the First Amendment right exists if "public scrutiny" would "benefit" the proceedings. *Seattle Times Co. v. U.S. Dist. Court*, 845 F.2d 1513, 1516, 1517 (9th Cir. 1988). Judicial "records are public documents almost by definition, and the public is entitled to access by default." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). This presumptive right of access to court documents is well-established in the Ninth Circuit.[11]

---

[11] *Wood v. Ryan*, 759 F.3d 1076, 1081–82 (9th Cir.) (collecting cases), *vacated*, 135 S. Ct. 21 (2014); *see, e.g.*, *Oregonian Publ'g. Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents."); *see also Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) ("[T]he federal courts of appeals have widely agreed that [the First Amendment right of access] extends to civil proceedings and associated records and documents."); *Phoenix Newspapers, Inc. v. U.S. Dist. Court*, 156 F.3d 940, 946–49 (9th Cir. 1998) (recognizing qualified right to transcripts of closed post-trial proceedings); *Seattle Times Co.*, 845 F.2d at 1514–17 (recognizing qualified right to pretrial release proceedings and related documents); *CBS, Inc. v. U.S. Dist. Court*, 765 F.2d 823, 824–26 (9th Cir. 1985) (recognizing a qualified right of access to post-trial documents).

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

a.    The First Amendment requires the release of the court's

sealed ruling and legal reasoning.

News reports indicate that after "oral arguments on the contempt motion," a judge in this Court issued a "sealed ruling" or "decision." *See* Reuters, Sept. 28, 2018; Wash. Post, Sept. 28, 2018. This Court's local rules require it to issue public orders when granting or denying sealing requests. *See* Local Rule 141(d) (E.D. Cal. 2018). Both experience and logic demand that the public have access to these judicial records and related filings containing legal arguments that bore on the Court's decision. *Press-Enterprise II*, 478 U.S. at 8–10; *see, e.g.*, *Doe v. Exxon Mobil Corp.*, 570 F. Supp. 2d 49, 52 (D.D.C. 2008) ("[T]he public's right to access judicial opinions is very high."); *Prod. Res. Grp. v. Martin Prof'l*, 907 F. Supp. 2d 401, 417 (S.D.N.Y. 2012) ("The qualified First Amendment right attaches to judicial opinions."); *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, 2003 WL 23867343, at *1 (W.D. Wash. Mar. 10, 2003) ("Courts recognize a general presumptive public right of access to court records. Naturally, this presumption applies with considerable force to opinions issued by the court." (citations omitted)).

(i)    Our legal system is built on a tradition of access to

judicial decisions.

Not only is there a nearly unbroken tradition of public access to judicial opinions, but such access is the very bedrock of our constitutional system. As is well-known, "it is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Further, because "the law is definite and knowable," every person is presumed to know the law. *Cheek v. United States*, 498 U.S. 192, 199 (1991). Therefore, in order to know the law—as the judicial system presumes every person does—every person must have access to the decisions of the courts.

Access to judicial decisions has been an important part of our civic heritage since even before the Founding. As English jurist William Blackstone wrote in 1765, "The decisions . . . of courts are held in the highest regard, and are not only preserved as authentic records in the

treasuries of the several courts, but are handed out to public view in the numerous volumes of reports which furnish the lawyer's library." 1 William Blackstone, *Commentaries* *69–74. *See generally* Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177, 181–90 (2009) (discussing English practices of open courts). As a result, that judicial decisions would be publicly accessible was taken as a given in the creation of the American justice system. *Id.* at 191–97 (discussing American practices of open courts).

The Supreme Court first affirmed this right of access in 1888, when it found that judicial opinions were not copyrightable because "[t]he whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute." *Banks v. Manchester*, 128 U.S. 244, 253 (1888); *see also Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 668 (1834) (finding that "no reporter has or can have any copyright in the written opinions delivered by this court"). In ruling judicial decisions were "free for publication to all," the Supreme Court cited the decision of the Massachusetts Supreme Court, which said further, "Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions, and that it is against sound public policy to prevent this." *Nash v. Lathrop*, 6 N.E. 559, 560–61 (Mass. 1886). The Eleventh Circuit recently affirmed this reasoning in an October 2018 decision holding that annotations to Georgia state law were not copyrightable. *See Code Revision Comm'n v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1239 (11th Cir. 2018) ("We understand the rule in *Banks* to derive from first principles about the nature of law in our democracy. Under democratic rule, the People are sovereign, they govern themselves through their legislative and judicial representatives, and they are ultimately the source of our law.").

Modern courts, including the Ninth Circuit, have reiterated the right of access. *See United States v. Index Newspapers LLC*, 766 F.3d 1072, 1097 (9th Cir. 2014) (remanding for the district court to unseal a judicial ruling); *see also Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("What happens in the halls of government is presumptively public business. Judges

1  deliberate in private but issue public decisions after public arguments based on public records.").

2  As the Third Circuit explained in *Lowenschuss v. West Pub. Co.*, because "ours is a common-law

3  system based on the 'directive force' of precedents, its effective and efficient functioning

4  *demands* wide dissemination of judicial decisions. . . . Accordingly, under our system of

5  jurisprudence the judiciary has the duty of publishing and disseminating its decisions." 542 F.2d

6  180, 185, 186 (3d Cir. 1976) (emphasis added) (quoting Benjamin N. Cardozo, *The Nature of the*

7  *Judicial Process* 20, 21–22 (1963)).

8                         (ii)      Logic demands that the public have access to this

9                                      judicial decision.

10        To maintain a government of the people, by the people, for the people, logic requires that

11  the people have access to the laws that govern them. *See In re Copley Press*, 518 F.3d at 1026

12  n.2 ("Though our cases refer to this as the 'experience and logic' test, it's clear that these are not

13  separate inquiries. Where access has traditionally been granted to the public without serious

14  adverse consequences, logic necessarily follows. It is only where access has traditionally not

15  been granted that we look to logic. If logic favors disclosure in such circumstances, it is

16  necessarily dispositive."). As such, access to judicial opinions serves several critical purposes in

17  modern governance.

18        First, the functioning of our common-law system depends on courts making their

19  opinions publicly accessible, so that litigants and judges may rely on each other's reasoning to

20  guide their own. *See, e.g.*, *Penny v. Little*, 4 Ill. (3 Scam.) 301, 304 (1841) ("The common law is

21  a beautiful system; containing the wisdom and experience of ages."). The rationale for such

22  transparency is especially weighty here. Although it's possible that other courts have confronted

23  similar issues in secret, the Eastern District of California may be the first court to rule on whether

24  the federal government can force a private social media company to undermine its own security

25  architecture to aid a criminal investigation. Other litigants should have access to this Court's

26  opinion so that they may rely on, respond to, or distinguish this Court's reasoning if and when

27  factually analogous cases arise.

28

Furthermore, public access to opinions is a prerequisite for public scrutiny of the courts. As the Supreme Court has explained, "the criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal justice system, and, if sufficiently informed about those happenings, might wish to make changes in the system." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1070 (1991). Relatedly, the Fourth Circuit has found in the context of civil litigation:

> [L]ogic dictates that the First Amendment right of access extends to a judicial opinion ruling on a summary judgment motion. The public has an interest in learning not only the evidence and records filed in connection with summary judgment proceedings but also the district court's decision ruling on a summary judgment motion and the grounds supporting its decision. Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible.

*Co. Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014); *see also Encyclopedia Brown Prods. v. Home Box Office*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("There is a particularly strong presumption of public access to such decisions as well as to the briefs and documents submitted in relation thereto. The Court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing."). Courts have found that public access "helps safeguard the integrity, quality, and respect in our judicial system and permits the public to keep a watchful eye on the workings of public agencies." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) (citations omitted).

This kind of scrutiny increases confidence and trust in the judicial system. In denying motions to seal, Judge Easterbrook has explained, "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil Co.*, 220 F.3d at 568. The Third Circuit has also reiterated that "access to judicial proceedings and records helps to impart legitimacy to the pronouncements of our rather insulated federal judiciary." *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) (affirming lower court's opinion unsealing the

material filed in connection with a motion for summary judgment). As such, the public should also know the judicial proceedings, including the legal arguments that the court considered, adopted, or rejected, in order to better understand the court's decisions in matters of great public concern.

Moreover, the right to access is "accentuated" where, as here, secrecy hinders the public's right to know about the actions of both its executive and judicial branches of government. *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). The case at issue involves a novel question about the application of laws written for analog technologies to internet platforms—a question that the judiciary reportedly answered by placing limits on the executive's request for expanded powers. Public scrutiny here could serve both to increase confidence in the judicial system and the checks and balances in our government at large.

Finally, citizens should have access to judicial opinions which properly belong to them. As the Seventh Circuit has said, "Opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them." *PepsiCo v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) (rejecting motions to seal); *see also Nash*, 6 N.E. at 560–61 ("The policy of the state always has been that the opinions of the justices, after they are delivered, belong to the public."). There is no logical reason to deny citizens what is theirs.

b.     The public's constitutional right of access applies to the docket sheet.

Docket sheets are the quintessential court document that must be accessible by the public. The docket sheet offers a window into the activities of the court, providing pertinent information to the public. *See United States v. Ochoa-Vasquez,* 428 F.3d 1015, 1029 n.15 (11th Cir. 2005). Access to docket sheets is critical, in part because maintaining a "two-tier system, open and closed," accessible and sealed, threatens the public "[c]onfidence in the accuracy of [the court's] records . . . the authority of its rulings and the respect due to its judgments." *CBS*, 765 F.2d at 826.

(i)      There is a "centuries-long" tradition of access to docket sheets.

Docket sheets easily satisfy the "experience" prong of the *Press-Enterprise II* "experience and logic" test. 478 U.S. at 8–10. This country has a "centuries-long history of public access to dockets." *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012). That tradition is deeply embedded in both the legislative and judicial branches. "Since the first years of the Republic, state statutes have mandated that clerks maintain records of judicial proceedings in the form of docket books, which were presumed open either by common law or in accordance with particular legislation." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004). This right of access "ensure[s] that the constitutionally protected 'discussion of governmental affairs' is an informed one." *Globe Newspaper*, 457 U.S. at 596 (citation omitted) (discussing generally the First Amendment right to access).

This right of public access has also been honored by the courts, stemming from the United States' "long history of distrust for secret proceedings," which "are the exception rather than the rule in our courts." *Index Newspapers LLC*, 766 F.3d at 1084 (citations omitted) (noting the newspaper, in part, sought access to the docket of a contempt proceeding). Courts have repeatedly affirmed the public's right to access docket sheets in both civil and criminal proceedings. *See, e.g.*, *id.* at 1085 (holding the district court had to unseal its docket); *Pub. Citizen*, 749 F.3d at 268 (finding a qualified right of access to docket sheets); *Ochoa-Vasquez*, 428 F.3d at 1029 ("[P]ublic docket sheets are essential to provide 'meaningful access' to criminal proceedings. Thus, we held that the press and public's qualified First Amendment right to access criminal proceedings extends to the proceedings' docket sheets."); *Pellegrino*, 380 F.3d at 96 (finding a presumptive right of access to dockets); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) ("[M]aintenance of a dual-docketing system [both private and public] is an unconstitutional infringement on the public and press's qualified right of access to criminal proceedings."); *In re Search Warrant*, 855 F.2d 569, 575 (8th Cir. 1988) (finding it was improper for the district court to seal dockets).

(ii)     Logic demands public docket sheets.

Logic also demands public access to docket sheets. Docket sheets are not merely judicial records—they "provide a kind of index to judicial proceedings and documents," without which "the public and press" would not have "the capacity to exercise their rights guaranteed by the First Amendment." *Pellegrino*, 380 F.3d at 95. As such, access to docket sheets is a prerequisite for knowing the law. *See Banks & Bros. v. W. Pub. Co.*, 27 F. 50, 57 (C.C.D. Minn. 1886) ("[I]t is a maxim of universal application that every man is presumed to know the law, and it would seem inherent that freedom of access to the laws, or the official interpretation of those laws, should be co-extensive with the sweep of the maxim."). The public cannot know the law without access to judicial rulings, but cannot access judicial rulings without docket sheets indicating what rulings have been made.

In *Globe Newspaper Co. v. Fenton*, the District of Massachusetts explained the necessity of access to dockets as a gateway to substantive legal rulings. 819 F. Supp. 89, 90 (D. Mass. 1993). In *Fenton*, reporters sought access to alphabetical indices of criminal cases maintained by the court system. *Id.* The district court found that denying access to the indices thwarted "the central purpose of the First Amendment," which is to "mak[e] the operations of government institutions subject to effective public scrutiny." *Id.* at 94–95 (citing *Richmond Newspapers*, 448 U.S. at 555). Even if the public technically had access to the underlying court records, the public was "left without a meaningful mechanism by which to find the documents necessary to learn what actually transpired in the courts." *Id.* at 94. As a result, the court found denying access to the indices violated the plaintiffs' constitutional right of access. *Id.* at 99.

In the same way, the ability of the public to exercise its right to access any individual court records described on a docket sheet is effectively foreclosed when the entire docket sheet is sealed. *See Pellegrino,* 380 F.3d at 94 ("Sealed docket sheets would also frustrate the ability of the press and the public to inspect those documents, such as transcripts, that we have held presumptively open."); *Pub. Citizen*, 749 F.3d at 268 ("Our skepticism toward wholesale sealing

of docket sheets [is] grounded in the commonsensical observation that most of the information contained on a docket sheet is material that is presumptively open to public inspection.").

Here, the mere existence of a docket is known only through news reports, and to Movants' knowledge, the case number and other basic docketing information is not publicly available.[12] The inability to learn basic information about the case frustrates public access because without a case number, no one can directly intervene in the case. It also "thwart[s] appellate or collateral review of the underlying sealing decisions. Without open docket sheets, a reviewing court cannot ascertain whether judicial sealing orders exist." *Pellegrino,* 380 F.3d at 94. In *United States v. Aguilar*, the Eastern District of California discussed the importance of a publicly-created docket to "reasonably place the public on notice that it may have a First Amendment presumptive right of access to all or part of the filing." No. 15-cr-41-GEB, 2017 WL 5461362, at *3 (E.D. Cal. Nov. 13, 2017). For that reason, the failure to index documents is "tantamount to creating a secret docketing system." *Id.*

In recent years, the government and courts have recognized the importance of public dockets, especially in surveillance cases. For example, the Eastern District of Virginia maintains a publicly accessible electronic surveillance docket called the "EC" docket that tracks Stored Communications Act and pen register/trap trace applications. *See In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 300 F. Supp. 3d 61, 73 n.8 (D.D.C. 2018) (citing *United States v. Appelbaum*, 707 F.3d 283, 288 (4th Cir. 2013)). The District Court for the District of Columbia has noted that while the EC docket "reveals to the public some information that relates to open investigations," the Justice Department has said the docket "'doesn't seem to put anybody in danger,' and that a similar docketing system's implementation in [D.D.C.] would be 'acceptable.'" *Id.* Furthermore, in response to the ACLU's motion in the District of Maryland to unseal only the docket sheet associated with a malware warrant, the

---

[12] Indeed, the underlying criminal investigation relating to the reported Messenger wiretap request contains no reference to the requested docket, much less includes any of the materials in that docket. Crim. Compl., *United States v. Barrera-Palma et al.*, No. 18-mj-150 (E.D. Cal. Aug. 29, 2018), ECF No. 20; *see* Reuters (Sept. 28, 2018).

MOTION TO UNSEAL COURT RECORDS CONCERNING U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK

Justice Department instead chose to unseal not only the docket sheet, but also "redacted versions of search warrants, applications for search warrants, search warrant affidavits, and search warrant returns." Government's Response to Motion to Unseal Docket Sheet at 1, *In re Sealed Docket Sheet Associated with Malware Warrant Issued on July 22, 2013*, No. 16-cv-3029 (D. Md. Nov. 4, 2016), ECF No. 17.

Moreover, the sealing of the docket sheet in this case impermissibly prevents the public from knowing anything about the actions of both the judiciary and the executive in navigating a novel legal issue, which has the potential to reoccur in the future. This case involves the executive branch's attempt to force a private corporation to break the encryption and other security mechanisms on a product relied upon by the public to have private conversations. The government is not just seeking information held by a third party; rather, it appears to be attempting to get this Court to force a communications platform to redesign its product to thwart efforts to secure communications between users.

The significance of the right of access to court documents is at its "apex" where, as here, the underlying action implicates "not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Pub. Citizen,* 749 F.3d at 271. "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *FTC*, 830 F.2d at 410.

2.    The common law also requires unsealing the docket sheet and ruling.

The Ninth Circuit has also recognized the common law right of access creates "a strong presumption in favor of access to court records" so long as "the documents are not among those which have traditionally been kept secret for important policy reasons." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134–35 (9th Cir. 2003) (citation omitted); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) (noting that the right of public access "antedates the Constitution" and "is now beyond dispute"); *Kamakana,* 447 F.3d at 1178 (finding only a "narrow range of documents" is exempt from the common-law right of public

access). The Ninth Circuit has said the test for this presumptive right of access turns on whether a particular court record "is more than tangentially related to the merits of a case." *Ctr. for Auto Safety*, 809 F.3d at 1101 (rejecting a "binary approach" delineating levels of access based on whether a judicial record is dispositive or non-dispositive).

> a.   There is a common law right to judicial rulings.

If the common law right of access applies to any kind of document, it must apply to a ruling on the proceedings. Such a ruling "is more than tangentially related to the merits of a case;" it *is* an adjudication of the merits of the case. *Id.* at 1101. The Ninth Circuit has said the public-policy rationale for "the strong presumption of access" to judicial records is that "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad.*, 798 F.2d at 1294). As such, there's an indisputable public interest in access to the resolution of the dispute at issue, and the government cannot present a compelling, countervailing interest in secrecy.

> b.   There is a common law right to docket sheets.

Since the Founding, dockets have been "presumed open either *by common law* or in accordance with particular legislation." *Pellegrino*, 380 F.3d at 94 (emphasis added). The common-law presumption of access is likewise particularly strong when the entire record of a case is sealed, as here. *See Phoenix Newspapers*, 156 F.3d at 946 (stating that there is a strong presumption in favor of general public access to records); *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) (vacating the order that granted defendant's motion to place the entire record under seal). The docket serves as the base document from which all other court records can be found. For that reason, there must be a strong presumptive right of access to this particular judicial document, which effectively permits access to the rest. *See, e.g.*, *Pub. Citizen*, 749 F.3d at 268 ("By sealing the entire docket sheet . . . courts effectively shut out the public and the press from exercising their constitutional and common-law right of access to civil proceedings.").

        c.        There is good cause for unsealing the docket sheet and ruling under the Wiretap Act.

Assuming the sealed proceedings involved a Wiretap Act application or technical assistance request, there is good cause for unsealing the materials under the statute because both the First Amendment and common-law rights of access require unsealing of the docket sheet and ruling. 18 U.S.C. § 2518(8)(b).[13]

Good cause for unsealing under section 2518(8(b) is met here because Movants have shown both that the tradition of access and logic supports unsealing of the materials in this case. *See supra* 8–18. In particular, unsealing records here would "play[] a significant positive role in the functioning of" how this Court administers third-party assistance orders sought by law enforcement under the Wiretap Act. *Press-Enter. II*, 478 U.S. at 8 (citation omitted).

Further, there is good cause to unseal the materials because disclosure here will illuminate the government's actions in seeking the contents of communications from providers such as Facebook. For example, although the Wiretap Act requires reporting aggregate data about how often law enforcement sought such orders, there is large gap between the data reported annually and the number of requests that providers indicate they received. *See* Albert Gidari, *Wiretap Numbers Don't Add Up*, Just Security, July 6, 2015, https://perma.cc/FRP6-DEET. Additionally, the fact that the Wiretap Act requires law enforcement to report when they encountered encryption in the process of intercepting communications demonstrates that unsealing would not be harmful because it is publicly known that law enforcement sometimes cannot access the contents of communications.

Moreover, the purpose behind section 2518(8)(b)'s sealing requirements—protecting the privacy of individuals captured in intercepted communications and the integrity of ongoing investigations—can be met by redacting information that identifies individuals targeted by law

---

[13] 18 U.S.C. § 2518(8)(b) states that "[a]pplications made and orders granted under this chapter shall be sealed by the judge . . . [and] disclosed only upon a showing of good cause before a judge of competent jurisdiction." The statute seeks to protect the integrity of ongoing investigations and the privacy interests of innocent third parties and of defendants.

enforcement or specific information that would frustrate law-enforcement investigative efforts. *See United States v. Bus. of the Custer Battlefield Museum*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011) (finding competing concerns can typically be accommodated "by redacting sensitive information rather than refusing to unseal the materials entirely." (citations omitted)). Movants in this matter are seeking to learn the government's legal justification for the technical assistance it sought and the Court's own reasoning and decision, not information about the individuals implicated in the underlying investigation or the details of any ongoing investigation. Thus, decisions in other Circuits holding that the Wiretap Act's secrecy and confidentiality provisions outweigh the public's right of access do not apply. *See In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("*NYT I*"); *In re N.Y. Times Co.*, 577 F.3d 401, 409–11 (2d Cir. 2009). In any event, the Ninth Circuit has not yet addressed how the Wiretap Act's secrecy provisions interact with the First Amendment right of access to third-party technical assistance orders under the Wiretap Act. *See United States v. Kwok Cheung Chow*, No. 14-cr-196, 2015 WL 5094744, at *3 (N.D. Cal. Aug. 28, 2015) (noting the lack of binding Ninth Circuit precedent on access to wiretap materials); *see also NYT I*, 828 F.2d at 115 ("[A] statute cannot override a constitutional right" of access (footnote omitted)).

> d.    The government cannot articulate a compelling interest that outweighs the public's right of access and show that sealing the entire record is a tailored means of accommodating that interest.

Under both the First Amendment and common law, the government bears the burden of articulating a compelling interest in secrecy strong enough to overcome the presumption of public access to judicial records. *See Press-Enter. II*, 478 U.S. at 15. Once the First Amendment right of access attaches, the State must show that denial of the presumptive right "is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper*, 457 U.S. at 606–07; *see also N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 296 (2d Cir. 2012) ("What offends the First Amendment [is judicial secrecy imposed]

without sufficient justification."). Similarly, litigants can only overcome the common-law right of access by "articulat[ing] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178–79 (citations omitted). Courts must "conscientiously balance[] the competing interests" of the public and of the party who seeks to keep certain judicial records secret. *Foltz*, 331 F.3d at 1135. Thus, mere "conjecture" or "hypothesis" is insufficient to seal a record. *Hagestad v. Tragesser,* 49 F.3d 1430, 1435 (9th Cir. 1995) (vacating a sealing order because "the district court failed to articulate any reason" for it); *Oliner v. Kontrabecki,* 745 F.3d 1024, 1025–26 (9th Cir. 2014) ("The only reasons provided for sealing the records—to avoid embarrassment or annoyance to [one of the parties] and to prevent an undue burden on his professional endeavors—are not 'compelling.'").

The government cannot have a compelling reason that supports ongoing sealing of the materials Movants seek, which contain legal reasoning, likely including interpretations of surveillance statutes and the Constitution. As explained above, judicial reasoning is at the core of the First Amendment right of access, as is the docket sheet, which serves as an index to government and judicial activities. Moreover, because the presumption of access applies broadly to materials essential to a particular proceeding, *see Cal. First Amendment Coal. v. Woodford*, 299 F.3d at 874 (ruling that meaningful access to a proceeding required expansion of access to behind-the-scenes proceedings); *Pub. Citizen*, 749 F.3d at 267 ("[T]he First Amendment right of access extends to materials submitted in conjunction with judicial proceedings that themselves would trigger the right to access."),[14] it likewise compels the release of any legal reasoning

---

[14] Courts have held that the public's First Amendment right of access attaches to materials in the record of a criminal case for this reason. *See, e.g.*, *In re Globe Newspaper*, 729 F.2d 47 (1st Cir. 1984) (right of access attaches to memorandum, affidavits and transcripts in criminal case); *NYT I*, 828 F.2d 110 (same for suppression motions and exhibits); *In re Wash. Post Co.*, 807 F.2d 383 (4th Cir. 1986) (same for plea agreements); *United States v. Peters*, 754 F.2d 753, 763 (7th Cir. 1985) (same for trial exhibits).

Motion to Unseal Court Records Concerning U.S. Department of Justice Motion to Compel Facebook

contained in government submissions that is incorporated, adopted, or rejected implicitly or explicitly in a judicial opinion. To be sure, the government may have a compelling interest in protecting investigatory details, including its particular targets. But it is insupportable to conclude that the government has a compelling interest in preventing disclosure of judicial opinions adjudicating the legality of proposed surveillance efforts. The ways in which law enforcement carries out wiretap orders are regulated and overseen by the courts that authorized those orders—which, in turn, are overseen by the public.

Instead of wholesale sealing, redaction is the appropriate and effective way to protect law enforcement and privacy interests, while vindicating the public's right of access as well. *See Custer Battlefield Museum*, 658 F.3d at 1195 n.5 (finding that competing concerns can typically be accommodated "by redacting sensitive information rather than refusing to unseal the materials entirely"). As explained above, Movants have no interest in the details of ongoing criminal investigations, such as the names of informants or the names of people who were investigated but not charged. Nevertheless, the First Amendment requires the Court itself to ensure that any redactions are narrowly tailored to serve the government interest in secrecy over such information.

There is precedent for releasing redacted records of this kind without any harm to compelling government interests. For example, Movants ask for less here than the government voluntarily revealed by filing a motion to compel on the public docket in the Apple–FBI dispute. That docket sheet and all the briefings are open for public inspection. *See In the Matter of the Search of an Apple iPhone*, No. 16-cm-10-SP (C.D. Cal. Mar. 29, 2016). Likewise, even the Foreign Intelligence Surveillance Court—a judicial body tasked with adjudicating matters relating to national security—has released redacted versions of its opinions containing significant interpretations of law. *See, e.g.*, Order, *In re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things From [Redacted]*, No. BR 06-05 (F.I.S.C. May 24, 2006), https://perma.cc/2CPA-KLEE (approving the government's request for authorization to collect bulk telephony metadata); *see also* James R. Clapper, DNI Clapper

Declassifies Intelligence Community Documents Regarding Collection Under Section 501 of the Foreign Intelligence Surveillance Act (FISA), IC on the Record (Sept. 10, 2013), https://perma.cc/WUA7-LP7E. Congress in 2015 mandated that the Executive Branch review and release all significant FISC opinions "to the greatest extent practicable," including by redacting sensitive information. *See* USA FREEDOM Act, H.R. 2048, 114th Cong. § 402 (2015) (enacted) (requiring the Director of National Intelligence to review FISC and FISCR decisions containing "a significant construction or interpretation of any provision of law," and make them "publicly available to the greatest extent practicable" by redacting sensitive information as necessary); *see also* 50 U.S.C. § 1872 (codifying the declassification provision).

As a result, Movants expect that all sensitive information whose disclosure would implicate any compelling government interest can be redacted from the judicial rulings and docket sheets associated with the government's attempt to decrypt Facebook Messenger communications—while still allowing public access to the substantive law regarding encryption.

## V.    CONCLUSION

For the reasons explained above, Movants respectfully request that this Court unseal the following materials associated with oral arguments this Court reportedly held on August 14, 2018 on a U.S. Department of Justice motion to hold Facebook in contempt of court (subject to appropriate redactions):

- any sealed docket sheets;
- any court orders on sealing requests;
- any judicial rulings associated with the aforementioned proceedings; and
- any legal analysis presented in government submissions incorporated, adopted, or rejected implicitly or explicitly in such judicial rulings.

Dated:   November 28, 2018

Respectfully submitted,

 /s/ Jacob A. Snow
(as authorized on Nov. 28, 2018)

Christine P. Sun (CA Bar No. 218701)
Jacob A. Snow (CA Bar No. 270988)
AMERICAN CIVIL LIBERTIES
    FOUNDATION OF NORTHERN
    CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: 415.621.2493
F: 415.255.8437
csun@aclunc.org
jsnow@aclunc.org

*Attorneys for Movants American Civil*
*Liberties Union of Northern California &*
*American Civil Liberties Union*
*Foundation of Northern California*


 /s/ Riana Pfefferkorn
(as authorized on Nov. 28, 2018)

Riana Pfefferkorn (CA Bar No. 266817)
559 Nathan Abbott Way
Stanford, CA 94305-8610
T: 650.736.8675
F: 650.725.4086
riana@law.stanford.edu

*Pro Se*

 /s/ Jennifer Stisa Granick

Jennifer Stisa Granick (CA Bar No. 168423)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
39 Drumm Street
San Francisco, CA  94111
T: 415.343.0758
jgranick@aclu.org

Brett Max Kaufman (NY Bar No. 4828398)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2603
bkaufman@aclu.org

*Attorneys for Movants American Civil Liberties*
*Union & American Civil Liberties Union*
*Foundation*


 /s/ Nathan D. Cardozo
(as authorized on Nov. 28, 2018)

Nathan D. Cardozo (CA Bar No. 259097)
Andrew Crocker (CA Bar No. 291596)
Aaron Mackey (CA Bar No. 286647)
Camille Fischer (MD Bar No. 201612130192)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
T: 415.436.9333
F: 415.436.9993
nate@eff.org
andrew@eff.org
amackey@eff.org
cfischer@eff.org

*Attorneys for Movant Electronic Frontier*
*Foundation*