**JASSY VICK CAROLAN LLP**
Duffy Carolan (CA State Bar No. 154988)
601 Montgomery Street, Suite 850
San Francisco, California 94111
Telephone: (415) 539-3399
Facsimile: (415) 539-3394
dcarolan@jassyvick.com

Jean-Paul Jassy (Cal. Bar No. 205513)
Kevin L. Vick (Cal. Bar No. 220738)
Elizabeth Capel (Cal. Bar. No. 313390)
800 Wilshire Blvd., Suite 800
Los Angeles, California 90017
Tel: (310) 870-7048
jpjassy@jassyvick.com
kvick@jassyvick.com
ecapel@jassyvick.com

Attorneys for: WP Company LLC,
*dba The Washington Post*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

IN RE U.S. DEPARTMENT OF JUSTICE MOTION TO COMPEL FACEBOOK TO PROVIDE TECHNICAL ASSISTANCE IN SEALED CASE, OPINION ISSUED IN OR ABOUT SEPTEMBER 2018,

Misc. Case No. 1:18-mc-00057-EPG
Related Case No.: 1:18-cr-00207-LJO-SLO
(*USA v. Denis Barrera-Palma et al.*)

**APPLICATION OF WP COMPANY LLC, *dba THE WASHINGTON POST*, TO UNSEAL COURT RULING AND RELATED BREIFINGS OF PARTIES PERTAINING TO GOVERNMENT'S EFFORTS TO ENFORCE ASSISTANT PROVISIONS OF WIRETAP ACT AS TO FACEBOOK'S MESSENGER APP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: To be determined.
Dept: To be determined.
Judge: To be determined.

Trial Date: None Set

**TABLE OF CONTENT**

I. SUMMARY OF ARGUMENT .......... 1

II. LEGAL ANALYSIS .......... 2

A. *The Washington Post* Should be Permitted to Intervene to Vindicate its and the Public's Right of Access to Judicial Records. .......... 2

B. A Strong Presumption in Favor of Public Access Applies to Judicial Records, and Specifically to Investigatory-Related Records After an Indictment Issues. .......... 3

1. The Right of Access to Judicial Records Arises Both Under the Common Law and First Amendment. .......... 3

2. The Right of Access Attaches to Warrant Materials After an Indictment Issues. .......... 5

C. Title III'S Sealing Rules Do No Govern The Judicial Records Sought Here. .......... 7

1. Title III's Sealing Rules Govern Applications and Orders Granting Permission to Engage in Wiretapping; Not Orders Refusing to Compel Companies to Provide Technical Assistance to the Government. .......... 7

2. Facebook's Messenger App May Be Beyond the Reach of Title III's Enforcement Provisions and CALEA, and in Such Event Title III's Sealing Requirements Would be Inapplicable. .......... 9

D. The Government Carries a Heavy Burden to Justify the Continued Sealing of this Court's Order and Related Pleadings filed by the Parties on its Motion. .......... 10

III. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Cases**

*Application of Kansas City Star*,
666 F.2d 1168 (8th Cir. 1981). .......... 8

*Associated Press v. U.S. Dist. Court*,
705 F.2d 1143 (9th Cir. 1983) .......... 7, 10, 11

*Baltimore Sun Co. v. Goetz*,
886 F.2d 60 (4th Cir. 1989) .......... 10

*California ex rel. Lockyer v. Safeway, Inc.*,
355 F. Supp. 2d 1111 (C.D. Cal. 2005) .......... 3

*Center for Auto Safety v. Chrysler Group, LLC*,
809 F.3d 1092 (9th Cir. 2016) .......... 4

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014). .......... 4

*EEOC v. Nat'l Children's Ctr., Inc.*,
146 F.3d 1043 (D.C. Cir. 1998) .......... 3

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) .......... 4, 7, 10, 11

*Globe Newspaper Co. v. Superior Court*,
457 U.S. 596 (1982) .......... 2, 4

*Hagestad v. Tragesser*,
49 F.3d 1430 (9th Cir. 1995) .......... 11

*In re Application of New York Times Co. to Unseal Wiretap and Search Warrant Materials*,
577 F.3d 401 (2d Cir. 2009) .......... 9

*In re Guantanamo Bay Detainee Litig.*,
630 F. Supp. 2d 1 (D.D.C. 2009) .......... 3

*In re New York Times Co.*,
585 F. Supp. 2d 83 (D.D.C. 2008) .......... 6

*In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*,
855 F.2d 569 (8th Cir. 1988) .......... 6

*In re the Matter of The New York Times Co.*,
828 F.2d 110 (2d Cir. 1987) .......... 9

*In re U.S. for an Order Authorizing Roving Interception of Oral Communication*,
349 F.3d 1132 (9th Cir. 2003) .......... 8, 9, 10

*Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ........ 2, 4, 7, 11

*Katz v. United States*, 389 U.S. 347 (1967) ........ 6

*Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013) ........ 5

*Nixon v. Warner Communc'ns. Inc.*, 4 35 U.S. 589 (1978) ........ 4

*Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462 9th Cir. 1990) ........ 2, 11

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940 (9th Cir. 1998) ........ 2, 10

*Press Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) ........ 3, 11

Richmond Newspapers, Inv. v. Virginia, 448 U.S. 501 (1980) ........ 2, 4, 12

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096 (9th Cir. 1999) ........ 2, 3

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) ........ 5

*United States v. Beard*, 475 F. App'x 665 (9th Cir. 2012) ........ 3

*United States v. Business of Custer Battlefield Museum and Store Located at Interstate 90, Exit 514, South Billings, Montana*, 658 F.3d 1188 (9th Cir. 2011) ........ 5, 6, 10, 12

*United States v. Guerrero*, 693 F.3d 990 (9th Cir. 2012) ........ 7

*United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) ........ 5

*United States v. Kwok Cheung Chow*, 2015 WL 5094744 (N.D. Cal. 2015). ........ passim

*Waller v. Georgia*, 467 U.S. 39 (1984) ........ 6

**Statutes**

18 U.S.C. § 2518(4) ........ 8, 10

18 U.S.C. § 2518(8)(b) ........ 7

47 U.S.C. § 1002(b)(2) ........ 10

47 U.S.C. § 1002(b)(3) ........ 10

47 U.S.C. § 1007(a)(2) ........ 10

**Other Authorities**

S.Rep.No. 1097, 90th Cong., 2d Sess., reprinted in U.S. Code Cong. & Ad.News 2112, 2153 (1968) ........ 8

**Rules**

E.D. Local Rule 141(f) ........ 11

Fed. R. Civ. P. 24 (b). ........ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

Whether the government in its efforts to investigate crime can require third party internet service providers with voice over internet protocol ("VOIP") applications to alter their network structure to record private conversations is a matter of significant public interest. Applications such as Signal, WhatsApp and iMessage serve billions of users combined. Facebook's Messenger voice app alone has over 1.3 billion users. Whether existing laws compel such companies to provide technical assistance to the government to accomplish a wiretap of user calls, and, if so, at what cost to their systems' security and user's privacy are novel legal issues with profound implications.

This Court is believed to have confronted these issues head on in a matter that remains under seal, but which is believed to relate to a now public criminal complaint—filed with a 96-page public probable cause affidavit--against 16 alleged MS-13 gang members accused of multiple drug, racketeering and assault related crimes. *See US v. Berrera-Palma et al.*, United States District Court, Eastern District of California, 18-cr-00207-LJO-SLO, Dkt. # 20. As reported, the cases were charged despite this Court's refusal to compel Facebook to break its encryption on its Messenger voice app to comply with a wiretap order. *See* "Facebook wins court battle over law enforcement access to encrypted phone calls," *The Washington Post*, Sept. 28, 2018, www.washingtonpost.com/world/national-security/facebook-wins-court-battle-over-law-enforcement-access-to-encrypted-phone-calls/2018/09/28/df438a6a-c33a-11e8-b338-a3289f6cb742_story.html?noredirect=on&utm_term=.3e336aaa7ddd; *see also* Affidavit of FBI Task Force Officer Ryan Yetter, 18-cr-00207-LJO-SLO, Dkt. # 37 n. 20 ("As it relates to Facebook, VOIP calling allows live voice communication through Facebook['s] mobile phone applications. Currently, there is no practical method available by which law enforcement can monitor those calls."). Just why the Court denied the government's motion to compel Facebook's technical assistance is unknown. Yet, the public's interest in knowing the legal justifications underlying the Court's order and parties' arguments cannot be overstated.

By this application, *The Washington Post* joins the ACLU, the Electronic Frontier Foundation and Riana Pfefferkorn, Associate Director of Surveillance and Cybersecurity at Stanford Law School's Center of Internet and Society, in their efforts to obtain an order unsealing the order denying the requested relief sought by the government against Facebook, the parties' briefing on the government's motion to compel and the court docket in any assigned miscellaneous matter. *The Post* writes separately to provide further argument on two issues: (1) the importance of public access to post-indictment investigatory records submitted to a court to obtain necessary authorizations to conduct a search, and how that right compels access to at least the court's ruling and the legal reasoning advanced by the parties in a wiretap case; and (2) how the sealing provisions of the Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 USCA § 2518(8)(b)) pose no impediment to public access to the legal justifications underpinning this Court's ruling denying relief to the government, and related briefings containing the parties' legal arguments. It also moves separately to preserve the right to be heard on any arguments raised by the parties in opposition to this (or the ACLU's) application.

## II. LEGAL ANALYSIS

### A. *The Washington Post* Should be Permitted to Intervene to Vindicate its and the Public's Right of Access to Judicial Records.

It is well-established that the press and public have standing to challenge any limits on their right of access to judicial proceedings and court records, and that they have a right to be heard on the issue of their exclusion. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 610 n. 24 (1982) (under First Amendment, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from judicial proceedings); *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998) (press must be afforded an opportunity to object to closure of court proceedings); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462 1465 (9th Cir. 1990) (same).

Intervention is the appropriate procedural vehicle for journalists to vindicate public access rights. *See, e.g., Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999) (vacating trial

court's order denying newspaper's motion to intervene); *accord EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1043, 1045-46 (D.C. Cir. 1998) (allowing intervention "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order"); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 5 (D.D.C. 2009) (allowing press applicants to intervene to oppose sealing motion). Media participation in motions to close courtrooms or seal court records is vital because the press serves as "surrogates for the public" when it seeks to protect the public's right to follow the workings of the judicial system. As the court observed in *California ex rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111, 1124 (C.D. Cal. 2005), in unsealing documents at the request of an intervening newspaper, "the press has historically served as a monitor of both the State and the courts, and it plays a vital role in informing the citizenry on the actions of its government institutions."

Because *The Post's* right of access to judicial records is materially impaired by the present sealing of this Court's order denying the government's motion to compel Facebook's technical assistance to effectuate a wiretap order, and because its interests and the interests of the general public are not necessarily aligned with those of the parties to the underlying proceeding, its motion to intervene for the limited purpose of vindicating the right of public access to judicial records in this case should be granted. *See* Fed. R. Civ. P. 24(a) and (b).

### B. A Strong Presumption in Favor of Public Access Applies to Judicial Records, and Specifically to Investigatory-Related Records After an Indictment Issues.

#### 1. The Right of Access to Judicial Records Arises Both Under the Common Law and First Amendment.

The public's and the press' right to access judicial records is well entrenched in American jurisprudence and reaches back to the earliest days of the Republic. *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d at 1102. This right stems directly from the freedoms guaranteed by the First Amendment. *United States v. Beard*, 475 F. App'x 665, 668 (9th Cir. 2012) (stating that defendant had a "First Amendment right" to access judicial records); *see also Press Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (recognizing that the First Amendment guarantees access to government records in criminal proceedings). "[A] major purpose of [the First] Amendment was

to protect the free discussion of governmental affairs." *Globe Newspapers Co.*, 457 U.S. at 604 (internal quotations omitted). "The right of access is thus an essential part of the First Amendment's purpose to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014).

This tradition of open judicial proceedings "is no quirk of history; rather it has long been recognized as an indispensable attribute of an Anglo-American trial." *Richmond Newspapers,* 448 U.S. at 569 ("[H]istorically both civil and criminal trials have been presumptively open."). The Supreme Court has described public access as an "essential" component of the American judicial system that allows "the public to participate in and serve as a check upon the judicial process." *Globe Newspapers Co.*, 457 U.S. at 606.

The Ninth Circuit has recognized that the right of access to judicial records both under the First Amendment and common law. In *Courthouse News Serv.*, the Ninth Circuit squarely held that the First Amendment right of access "extends to [court] proceedings and associated records and documents." 750 F.3d at 786-87. As the Ninth Circuit observed, allowing the media to enforce the constitutional right of access to court proceedings "is essential not only to its own free expression, but also to the public's." *Id.* at 786.

Following United States Supreme Court precedent, the Ninth Circuit also has long recognized a general right under the common law to inspect and copy public records and documents, including judicial records and documents.'" *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Nixon v. Warner Communc'ns. Inc.*, 435 U.S. 589, 597 (1978)); *Kamakana*, 447 F.3d at 1178; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). As explained by the court in *Kamakana*, "'[t]his right is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies.'" *Kamakana*, 447 F.3d at 1178 (quoting *Nixon*, 435 U.S. at 598).

Importantly, the First Amendment and common law right of access to judicial records is not circumscribed by any rule that the underlying judicial proceeding be open to the public. The

Ninth Circuit has specifically rejected any such requirement. *See United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 n. 15 (9th Cir. 2014) (citing and declining to follow *Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013)).

**2. The Right of Access Attaches to Warrant Materials After an Indictment Issues.**

The Ninth Circuit has recognized "'two categories of documents' that are not covered by the common law right of access: 'grand jury transcripts and warrant materials *in the midst of a pre-indictment investigation*.'" *United States v. Business of Custer Battlefield Museum and Store Located at Interstate 90, Exit 514, South Billings, Montana ("Custer")*, 658 F.3d 1188, 1192 (9th Cir. 2011) (emphasis added) (citing *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)). *Times Mirror* involved a media request for access to search warrants and supporting affidavits during the pre-indictment stage of an ongoing criminal investigation, before any indictment had been returned. 873 F.2d at 1211. Against that posture, the Ninth Circuit reviewed the history and utility of public access to warrant information, and the need for secrecy to guard against "the obvious risk that the subject of the search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed." *Id.* at 1215. Another risk associated with disclosure at this stage was whether "persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Id.* These concerns, and an absence of a historical tradition of public access to pre-indictment warrant materials, lead the court to conclude that the common law right of access to judicial records did not attach to pre-indictment warrant materials. *Id.* at 1221. The court expressly reserved ruling on whether the right of access would attach to warrant materials after an investigation has concluded or an indictment has been returned. *Id.*

In 2011, the Ninth Circuit in *Custer* specifically addressed the issue left open in *Times Mirror*, holding in the post-investigation context, even when no charge is ever filed, that—at least—the common law right of access applied to search warrant materials. 658 F.3d at 1192. In so holding, the court stated that because post-investigation/post-indictment warrant materials

"have historically been available to the public…a strong presumption in favor of access is the starting point." *Id.* at 1193-94 (internal quotations omitted).[1] This tradition of openness, the court noted, "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Id* at 1194 (quoting *In re N.Y. Times Co*., 585 F. Supp. 2d at 90). Access to search warrants also is "'important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct.'" *Id.* at 1194 (quoting *In re Gunn*, 855 F.2d at 573). Similarly, the United States Supreme Court explained, in the context of suppression hearings, that "[a] challenge to the seizure of evidence frequently attacks the conduct of the police and prosecutors" and "strong pressures are naturally at work on the prosecution's witnesses to justify the propriety of their conduct in obtaining the evidence." *Waller v. Georgia*, 467 U.S. 39, 46-47 (1984). "The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny." *Id.*

The same salutary effects stemming from public scrutiny are at issue here where the government attempts to force a third party to the proceedings to alter its network systems to record private conversations over the internet. Indeed, the United States Supreme Court has expressly recognized that wiretapping—i.e., covert electronic interception of telephone communications—constitutes a search and seizure and thus violates the Fourth Amendment unless the government first obtains judicial authorization. *Katz v. United States*, 389 U.S. 347, 354 (1967).[2]

---

[1] In so holding, the court joined a number of other circuit courts to have reached the same conclusion. *Id.* at 1193 (and cases cited therein). *See also In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) (holding that First Amendment right of access applies to search warrant affidavit because "even though a search warrant is not part of a criminal trial itself, like voir dire, a search warrant is certainly an integral part of a criminal prosecution," and is often "at the center of pre-trial suppression hearings"); *In re New York Times Co.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) (holding that history and utility of access to post-indictment or post-investigation warrant materials support First Amendment right of access).

[2] In the wake of *Katz*, Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20, to provide a procedure for obtaining wiretap authorization and to limit disclosure of information obtained through wiretaps. *United States v. Kwok Cheung Chow*, 2015 WL 5094744 *3 (N.D. Cal. 2015). As explained below, these provisions do not govern access to orders *denying* a government's motion to compel compliance with a wiretap order or, more particularly, to orders denying enforcement of the "assistance capability and capacity

The same dual factors—experience and logic—that supported the Ninth Circuit's determination as to warrant materials therefore applies to an order denying enforcement of a wiretap order. *See United States v. Guerrero*, 693 F.3d 990, 1000 (9th Cir. 2012) (explaining that in looking at the experience prong of the two-part test for determining whether "the place or process have historically been open to the press and general public" the court "does not look at the particular practice in any one jurisdiction, but instead 'to the experience in that type or kind of hearing throughout the United States.'") (internal citations omitted). Thus, "a 'strong presumption in favor of access' is the starting point." *Kamakana*, 447 F.3d at 1178 (quoting *Foltz*, 331 F.3d at 1135)).[3]

**C. Title III'S Sealing Rules Do Not Govern the Judicial Records Sought Here.**

**1. Title III's Sealing Rules Govern Applications and Orders Granting Permission to Engage in Wiretapping; Not Orders Refusing to Compel Companies to Provide Technical Assistance to the Government.**

As explained, Title III, which governs the interception of a wire, oral, or electronic communication, was adopted to provide a procedure for obtaining wiretap authorizations and to limit the disclosure of certain information. *Chow*, 2015 WL 5094744 *3. It contains sealing requirements for both the recording of the contents of the intercepted communication and the application and order authorizing the intercept. As to the fruits of wiretaps, "18 U.S.C. § 2518(8)(b) sets forth limited circumstances in which information gleaned from wiretapping may

---

requirements under the Communications Assistance for Law Enforcement Act." 18 U.S.C.A. § 2518(4). Rather, access to such orders turns on the tradition and logic of access to pre-trial judicial records generally and, more particularly, to those records that illuminate the judicial process for obtaining authorizations to effectuate a Fourth Amendment search.

[3] The *Custer* case left open the question of where a First Amendment right of access attaches to warrant materials once an indictment is returned, finding it preferable to resolve the matter on common law grounds to "avoid reaching constitutional questions in advance of the necessity of deciding them." 658 F.3d at 1196 (quotations omitted). Given its express findings that access was supported by both experience and logic, however, it is safe to assume that if confronted with the issue, the Ninth Circuit would find that the First Amendment right of access attaches to warrant materials as well. *See Associated Press v. U.S. Dist. Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (finding that "the public and press have a first amendment right of access to pretrial documents generally.")

be disclosed, including disclosure between law enforcement officers and disclosure 'while giving testimony under oath or affirmation in any [judicial] proceeding.'" *Id.*

As to applications for and orders granting permission to engage in wiretapping, Section 2518(8)(b) provides in relevant part:

> Applications made and *orders granted* under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

18 U.S.C.A. § 2518(8)(b) (emphasis added); *see also Chow*, 2015 WL 5094744 *3 (describing reach of statute as applying to "applications for and orders granting permission to engage in wiretapping"). These sealing provisions are in keeping with Congress's dual purpose in enacting Title III: "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." *In re U.S. for an Order Authorizing Roving Interception of Oral Communication*, 349 F.3d 1132, 1136 (9th Cir. 2003) (quoting S.Rep.No. 1097, 90th Cong., 2d Sess., reprinted in U.S. Code Cong. & Admin. News 2112, 2153 (1968)); *see also Application of Kansas City Star*, 666 F.2d 1168, 1174 (8th Cir. 1981).

Notably absent from these sealing requirements is any mention of orders *denying* a government's application to wiretap, or orders *denying* relief to the government seeking to enforce the assistance capability and capacity requirements under the Communications Assistance for Law Enforcement Act ("CALEA"), as provided under Section 2522. *See* 18 U.S.C. § 2518(4) ("Pursuant to section 2522 of this chapter, an order may also be issued to enforce the assistance capability and capacity requirements under the Communications Assistance for Law Enforcement Act."). No statutory sealing requirements govern such denial orders. Nor does disclosure of an order denying an application to wiretap or an order denying enforcement of the technical assistance provisions of CALEA carry with it the same concerns raised with disclosure of the underlying application or order granting that application, which necessarily reveal the government's probable

cause determination and implicate privacy interests of suspect individuals.[4]

Tellingly, in one of the few Ninth Circuit decisions addressing the technical assistance provisions of Title III, the court, in reversing a district court order granting the government's request to force an operator of a vehicle monitoring system to assist its investigation, issued a *public, published* decision. *See In re Order Authorizing Roving Interception of Oral Communication*, 349 F.3d 1132 (9thCir. 2003).[5] It did so after specifically ordering its decision unsealed, after providing for the redaction of the name of the company and other identifying information. *See* 02-15635, Dkt. ## 25, 26 (A copy of the docket is attached hereto as Ex. 1.) On remand, the district court ordered the entire docket of the enforcement matter unsealed, including all briefing and its initial order denying the government's request. *See In re Application of USA*, United States District Court, District of Nevada, 2:01-cv-01495-LDG, Dkt. ## 42, 43 (A copy of the Order to Unseal File is attached as Ex. 2). This court should do the same.

**2. Facebook's Messenger App May Be Beyond the Reach of Title III's Enforcement Provisions and CALEA, and in Such Event Title III's Sealing Requirements Would be Inapplicable.**

Other reasons may exist for a finding that Facebook's Messenger app falls outside of the enforcement provisions of Title III, which provide a mechanism for compelling compliance with CALEA, thus rendering its sealing requirements inapplicable. For example, as in *In re U.S. for an*

---

[4] Even as to the fruits of a wiretap, courts have recognized a First Amendment right of access to such materials (redacted to protect certain privacy interests) once submitted to the court as a basis of adjudication. *See, e.g., Chow*, 2015 WL 5094744 *4 (recognizing a First Amendment right of access to briefs and orders entered in connection with a motion to suppress, including Title III materials, but finding a compelling reason to redact identities of third parties and the identities of government informants*); In re the Matter of The New York Times Co.*, 828 F.2d 110, 114-16 (2d Cir. 1987) (holding that Title III did not supersede the First Amendment right of access where materials were submitted in connection with a motion to suppress, but on remand calling for consideration of privacy interests); *cf. In re Application of New York Times Co. to Unseal Wiretap and Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009) (holding that Title III materials that had not been used in the context of a motion or trial did not fall within the right of access).

[5] Though finding that the company was a provider of "wire or electronic communication service" within the meaning of Section 2518(4), the court nevertheless held that the order interfered with the services provided by the company by preventing it from supplying the system's services to it customers while the vehicle is under surveillance. *Id.* at 1144. Thus, the order did not comply with Section 2518(4)'s requirement that the assistance must be provided "unobtrusively and with a minimum of interference with the services" provided to the person whose communications are to be intercepted. *Id.*

*Order Authorizing Roving Interception of Oral Communication*, 349 F.3d at 1146, it may not have been possible to provide the assistance requested "unobtrusively and with a minimum of interference with the service" as required under 18 U.S.C. Section 2518(4). Or Facebook and its service may fall outside of CALEA's technical assistance requirements altogether. Those requirements do not apply to "information services"; nor do they apply to encrypted communications, unless the encryption was provided by the carrier and the carrier possesses the information necessary to decrypt the communication. *See* 47 U.S.C. § 1002(b)(2) & (b)(3). They also do not apply if the assistance is not "reasonably achievable through the application of available technology…" 47 U.S.C. § 1007(a)(2). *The Post* is not privy to the full record before the Court as to those questions; accordingly, it takes no position on whether Facebook's Messenger app is covered by CALEA and, by extension, Title III's enforcement provisions. To the extent the answer is "no" as to either statute, the sealing requirements of Title III are plainly inapplicable. Moreover, we respectfully urge the Court to approach these questions with the public's First Amendment and common law rights of access to warrant materials (post-indictment) fully in mind.

**D. The Government Carries a Heavy Burden to Justify the Continued Sealing of this Court's Order and Related Pleadings filed by the Parties on its Motion.**

Under both the First Amendment and common law right of access, the Court starts from "a strong presumption in favor of access to court records." *Foltz*, 331 F.3d at 1135. But the First Amendment provides "a stronger right of access than the common law." *Custer*, 658 F3d.at 1197 n. 7; *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (distinction between rights afforded by the First Amendment and common law "is significant").

While the First Amendment right of access is a qualified right, any party seeking to seal judicial records subject to the right must meet a heavy constitutional burden. Here, the government must show that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Phoenix Newspapers, Inc.*, 156 F.3d at 949 (citation omitted); *see also Associated Press*, 705 F.2d at 1145 (public's right of access to documents filed in conjunction with criminal proceeding can be

overcome only by an affirmative showing that the sealing of documents is "*strictly and inescapably necessary*" to promote competing interest of the highest order) (emphasis added).

Before granting a motion to limit access, the Court must "make specific factual findings" that "satisfy all three substantive requirements for closure." *Id.* at 950; *see also Oregonian Publ'g Co.*, 920 F.2d at 1466 ("[a]n order of closure should include a discussion of the interests at stake, the applicable constitutional principles and the reasons for rejecting alternatives, if any, to closure.") (citations omitted). Where such findings are made, moreover, any closure ordered by the court must be narrowly tailored in time and scope, and must be effective in protecting the compelling interest at stake. *See Press-Enterprise Co*., 478 U.S. at 14 (requiring "on the record findings … demonstrating that 'closure is … narrowly tailored to serve [the compelling] interest,'" and "that closure would prevent" the harm asserted) (emphasis added) (citation omitted); *Associated Press,* 705 F.2d at 1146 ("there must be "a substantial probability that closure will be effective in protecting against the perceived harm'") (citation omitted).

Under the common law, the party seeking to seal judicial records must "articulate[ ] compelling reasons supported by specific factual findings… that outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" *Kamakana*, 447 F.3d at 1178-79 (internal citations omitted). The court must "conscientiously balance[ ] the competing interests" of the public and the party who seek to keep certain judicial records secret. *Id*. (citing *Foltz*, 331 F.3d at 1135). Conclusory assertions of harm are insufficient. *Id.* at 1182 (rejecting as insufficient "conclusory statements" that disclosure would place officers "in a false light").

If the court decides to seal certain judicial records, it must "base its decision on compelling reasons and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). [6]

---

[6] Local Rule 141(f) also provides that any person may move to unseal court records "upon a finding of good cause or consistent with applicable law…"

Here, any interest in privacy or confidentiality can be accommodated through appropriate redaction rather than wholesale withholding of judicial records. *See, e.g., Custer*, 658 F.3d at 1195 n. 5 (recognizing that certain concerns may warrant redaction of warrant materials); *Chow*, 2015 WL 5094744 * 4 (finding privacy interests of third parties and confidential informants warranted redaction of warrant materials). For instance, to the extent the parties' briefing and Court's ruling(s) on enforced wiretapping contain genuinely sensitive information about the criminal case (like the identities of confidential informants or targets of further investigations, or private information about individual Messenger users), those details could be redacted. The *Post's* interest is in the legal and policy arguments put forth by the parties, and the Court's resolution of them, in a case of obvious public significance.

Under the above standards, no justification exists for the continued wholesale sealing of this Court's ruling denying the relief sought by the government, the parties' briefing on the issue or any related non-public docket of the matter.

## III. CONCLUSION

As the United States Supreme Court noted in *Richmond Newspapers, Inc. v. Virginia*, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." 448 U.S. at 572. Because the exacting standards required to seal court records apply here, it is incumbent on the party seeking sealing to present evidence meeting its burden. Absent such a particularized showing, any order denying the government's motion to compel, the parties' briefing and the docket reflecting this matter should be made public without further delay.

Dated: Nov. 28, 2018.

**JASSY VICK CAROLAN LLP**

By: /s/ *Duffy Carolan*
Duffy Carolan
Attorneys for WP Company LLC, *dba The Washington Post*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

/s/ *Duffy Carolan*