SEALED

1 | McGREGOR W. SCOTT
United States Attorney
2 | KIMBERLY A. SANCHEZ
Assistant United States Attorney
3 | 2500 Tulare Street, Suite 4401
Fresno, CA 93721
4 | Telephone: (559) 497-4000
Facsimile: (559) 497-4099

5

6 | JEFFREY S. POLLAK
Criminal Division
U.S. Department of Justice

7

8 | Attorneys for United States of America





CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

_____
DEPUTY CLERK

9 | IN THE UNITED STATES DISTRICT COURT

10 | EASTERN DISTRICT OF CALIFORNIA

11 | IN RE U.S. DEPARTMENT OF JUSTICE     CASE NO. 1:18-MC-00057-LJO-EPG
MOTION TO COMPEL FACEBOOK TO
12 | PROVIDE TECHNICAL ASSISTANCE IN     EXHIBIT "A" TO GOVERNMENT'S
SEALED CASE, OPINION ISSUED IN OR     REQUEST TO TEMPORARILY SEAL EXHIBIT A
13 | ABOUT SEPTEMBER 2018     TO GOVERNMENT'S MOTION TO UNSEAL IN
PART GOVERNMENT'S RESPONSE TO
14 | MOVANTS' APPLICATIONS TO UNSEAL
TITLE III MATERIALS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1  McGREGOR W. SCOTT
   United States Attorney
2  KIMBERLY A. SANCHEZ
   Assistant United States Attorney
3  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
4  Telephone: (559) 497-4000
   Facsimile:  (559) 497-4099
5
   JEFFREY S. POLLAK
6  Criminal Division
   U.S. Department of Justice
7
   Attorneys for United States of America
8

9              IN THE UNITED STATES DISTRICT COURT

10               EASTERN DISTRICT OF CALIFORNIA

11

12  | IN RE U.S. DEPARTMENT OF JUSTICE | CASE NO.  1:18-MC-00057-LJO-EPG |
    | MOTION TO COMPEL FACEBOOK TO | |
13  | PROVIDE TECHNICAL ASSISTANCE IN | **UNDER SEAL** |
    | SEALED CASE, OPINION ISSUED IN OR | |
14  | ABOUT SEPTEMBER 2018 | GOVERNMENT'S RESPONSE IN OPPOSITION |
    | | TO MOTIONS TO UNSEAL COURT RECORDS |

15

16        The United States of America, by and through McGREGOR W. SCOTT, United States Attorney

17  for the Eastern District of California, KIMBERLY A. SANCHEZ, Assistant United States Attorney, and

18  JEFFREY S. POLLAK, Attorney for the Criminal Division, respectfully submits this Response in

19  Opposition to Motions to Unseal Court Records filed by the American Civil Liberties Union ("ACLU")[1]

20  and WP Company LLC dba The Washington Post ("Washington Post").  The Motions to Unseal should

21  be denied.  No First Amendment or common law right of access attaches to the sealed materials movants

22  seek to unseal.  Should the Court nonetheless determine that a qualified First Amendment or common

23  law right of access applies here, compelling law enforcement and privacy interests dictate that the

24  materials should remain sealed.

25

26

27        [1] Movants joining the ACLU's motion include the American Civil Liberties Union Foundation;
    the American Civil Liberties Union of Northern California; the Electronic Frontier Foundation; and
28  Riana Pfefferkorn, Associate Director of Surveillance and Cybersecurity at Stanford Law School's
    Center for Internet and Society, in her personal capacity.

## BACKGROUND

This motion relates to an investigation of members of MS-13 believed to be responsible for multiple kidnappings and murders that occurred in Mendota and Los Angeles, California, and Las Vegas, Nevada, between 2015 and 2018. *See generally* Crim. Compl., *United States v. Denis Barrera-Palma, et al.*, 18-jm-00150 (E.D. Cal.) (filed Aug. 29, 2018) [hereinafter "Compl."].[2] This investigation included orders issued by this Court pursuant to the Wiretap Act, 18 U.S.C. §§ 2510-2522 ("Title III"), for the interception of wire and/or electronic communications over cell phones and social media messaging accounts used by MS-13 members.

On August 29, 2018, the Government filed an unsealed Criminal Complaint in the Eastern District of California charging 16 members of MS-13 with two counts of assault with a dangerous weapon in aid of racketeering and one count of conspiracy to distribute controlled substances. *Id.* The affidavit accompanying the Complaint indicated that the investigation included "review of legally intercepted phone calls, text messages, Facebook postings, and Facebook messages." *Id.* at 4. It included transcripts of intercepted Facebook Messenger communications between the defendants and their co-conspirators. *See, e.g., id.* at 21, 24-31, 33, 45, 47, 51.

On November 28, 2018, citing media reports based on information from three unidentified sources "briefed on the case,"[3] the ACLU and the Washington Post filed the instant Motions to Unseal

---

[2] Further details of the Government's investigation, including the Title III technical assistance litigation that occurred as part of the investigation, cannot be discussed in a filing that could be made public. If requested by the Court for its consideration of the motions to unseal, the Government can provide a more detailed presentation of the investigation and the Title III technical assistance litigation under seal.

[3] *See* Dan Levine & Joseph Menn, *Exclusive: U.S. government seeks Facebook help to wiretap Messenger – sources*, Reuters (Aug. 17, 2018, 4:34 PM), https://www.reuters.com/article/us-facebook-encryption-exclusive/u-s-government-seeks-facebook-help-to-wiretap-messenger-sources-idUSKBN1L226D; *see also, e.g.,* Joseph Menn & Dan Levine, *Exclusive: In test case, U.S. fails to force Facebook to wiretap Messenger calls – sources*, Reuters (Sept. 28, 2018, 3:05 PM), https://www.reuters.com/article/us-facebook-encryption-exclusive-idUSKCN1M82K1; Ellen Nakashima, *Facebook wins court battle over law enforcement access to encrypted phone calls*, Washington Post (Sept. 28, 2018), https://www.washingtonpost.com/world/national-security/facebook-wins-court-battle-over-law-enforcement-access-to-encrypted-phone-calls/2018/09/28/df438a6a-c33a-11e8-b338-a3289f6cb742_story.html.

Court Records, seeking access to various Title III materials "associated with a U.S. Department of Justice motion to hold Facebook in contempt of court, which reportedly was heard on August 14, 2018." ACLU Mot. at 1. The ACLU requests that this Court unseal any sealed docket sheets; any court orders on sealing requests; any judicial rulings associated with the proceedings; and any legal analysis presented in government submissions. *Id.* at 2. "In sum," the ACLU requests "the docket sheet and the Court's legal analysis." *Id.* The Washington Post joined the ACLU's requests and specifically seeks "an order unsealing the order denying the requested relief sought by the government against Facebook, the parties' briefing on the government's motion to compel and the court docket in any assigned miscellaneous matter." Washington Post Mot. at 2. Movants concede redactions are appropriate if any of the materials they seek are unsealed. ACLU Mot. at 2; Washington Post Mot. at 12.

## ARGUMENT

Movants claim a First Amendment right of access to the court records at issue, as well as a narrower right of access based on common law. To find a First Amendment right, a court must consider whether experience and logic support public access to the materials at issue. Neither experience nor logic supports access to the records at issue here: materials directly arising from Title III applications and orders, access to which must be considered in the specific context of Title III's statutory framework that favors confidentiality.[4] Based on the statutory scheme, case law, and analysis of the interests at stake, this Court should find no First Amendment or common law right of access to the materials movants seek. The motions to unseal should be denied.

Title III materials have enjoyed a statutory presumption of privacy since the creation of the Wiretap Act. Since its enactment in 1968, that statute has provided that "[a]pplications made and orders granted under [Title III] *shall* be sealed," and may be disclosed only upon a showing of "good cause."

---

[4] This brief uses the term "Title III materials" to refer to wiretap applications and orders granting those applications, as well as to technical assistance orders under 18 U.S.C. § 2518(4) contained within those orders, and materials arising from efforts to enforce technical assistance orders.

18 U.S.C. § 2518(8)(b) (emphasis added).  As this provision confirms, there is no history of public access to Title III applications, orders, and materials connected with them, particularly when prosecutions based on interceptions under those orders are ongoing.  Further, logic does not support a right of public access to these materials because that would contravene Congress's clear intent to keep the materials confidential and private.  Nor does it matter, as movants contend, that the materials that they seek involve enforcement of a wiretap order rather than an underlying order or application itself. When no right of access exists for an underlying proceeding, matters arising directly from that sealed proceeding do not themselves trigger a right of access.  In this case, neither the First Amendment nor common law provides a right of access to the underlying Title III orders or the materials relating to efforts to enforce Title III orders that gave rise to the proceedings reported in the media.

Even if the Court were to find a qualified right of access attaches to the materials at issue here, movants' interests do not override the Government's compelling interests in: (1) preserving the secrecy and efficacy of specific, sensitive law enforcement techniques and capabilities; and (2) protecting a criminal investigation against the prejudice of premature disclosure.  These interests also inform the statutory presumption against disclosure of Title III materials.  Redaction is not a feasible alternative and would not adequately protect those interests.  The Title III materials that movants seek are so replete with sensitive investigatory information that redacting all such information would yield abridged documents that would misinform the public, rather than educate it, about the content, nuance, and significance of the original documents.  In addition, disclosure of these materials would undermine Title III by dissuading the Government from seeking to enforce technical assistance orders, as each enforcement effort would require the Government to gamble whether its sensitive surveillance capabilities would be revealed.

Finally, movants cannot show good cause to unseal the Title III materials they seek, as required by Section 2518(8)(b).  Good cause may only be shown by an "aggrieved person," and movants do not meet that standard.  Moreover, courts have consistently rejected media efforts to unseal wiretap materials as lacking good cause, despite the asserted interest in public discussion, based on the unique privacy interests and other equities at stake in Title III proceedings.

This Court should deny the motions.[5]

## I.   THE MATERIALS MOVANTS SEEK ENJOY A STATUTORY PRESUMPTION AGAINST DISCLOSURE UNDER TITLE III

Unlike most traditional criminal investigative techniques, unsealing and disclosure of Title III materials is governed by a comprehensive statutory scheme.  *United States v. Blagojevich*, 662 F. Supp. 2d 998, 1002 (N.D. Ill. 2009).  That scheme establishes a presumption against disclosure: it not only strictly circumscribes the circumstances under which the contents of Title III interceptions may be disclosed, *see* 18 U.S.C. §§ 2517(1)-(8); *Blagojevich*, 662 F. Supp. 2d at 1001-02 (stating that, with respect to the contents of a wiretap, Title III prohibits all disclosures not authorized by statute), but also requires the sealing of "[a]pplications made and orders granted" under Title III, 18 U.S.C. § 2518(8)(b).  As the Second Circuit concluded, "the structure and purpose of Title III—including the provision governing disclosure of wiretap applications—reveal[s] a manifest congressional intent that wiretap applications be treated confidentially and clearly negate[s] a presumption in favor of disclosure."  *In re Matter of the Application of the New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 408-10 (2d Cir. 2009) [hereinafter *New York Times*].

Section 2518(8)(b), particularly when read in the context of Title III's other restrictions, creates a strong presumption against disclosure of wiretap materials.  *See United States v. Leal-Felix*, 665 F.3d

---

[5] Should the Court disagree with the Government and conclude that limited unsealing with redactions might be appropriate, the Government reserves the right to submit for the Court's consideration, under seal, proposed redactions and argument concerning the scope of redactions and justifications for such redactions.

1037, 1041-42 (9th Cir. 2011) (en banc) (emphasizing that the Court must consider both the text of a

particular provision in a statute and the larger statutory text).  The legislative history of Title III supports

this presumption.  Congress intended that Title III "applications and orders for authorization shall be

treated confidentially."  S. Rep. No. 1097, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2194.  The Senate

Report further explains that "[a]pplications and orders may not be disclosed except incidental to the

disclosure or use of the records themselves after a showing of good cause, for example, under

[subparagraph] 10(a) [motion to suppress]."  *Id.*

      The materials movants seek are all wiretap materials, so they must be accorded this statutory

presumption against disclosure.  Movants seek documents pertaining to a motion for an order to show

cause as a means to compel a service provider's compliance with Title III orders granted pursuant to

Section 2518(4) that included orders that the service provider furnish all information, facilities, and

technical assistance necessary to accomplish interception by the Government, based on the

Government's applications for the same.  These materials repeat, analyze, or were otherwise derived

from information obtained pursuant to or directly arising from confidential Title III applications and

orders, and thus must be protected to the same extent as the original applications for, and orders

authorizing, interception.  "A technical assistance application is a type of wiretap application," and this

Court should not "separate out technical assistance applications as being subject to a different standard."

*In re Petition of Jennifer Granick and Riana Pfefferkorn*, at 11, 16-mc-80206-KAW (N.D. Cal. Dec. 18,

2018) (R&R) [hereinafter *Granick Petition*].  Indeed, as a magistrate judge in the Northern District of

California recently concluded, technical assistance applications "implicate the same privacy or

confidentiality concerns at issue with all wiretap applications."  *Id.*  Applications to enforce technical

assistance orders issued under Title III, and the enforcement proceedings and orders that result, are a

component of the investigatory process authorized by Title III.  They arise from this Court's inherent

(and implied) authority to enforce the Title III orders that the statute authorizes the Court to issue.  *See*

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 957 (9th Cir. 2014)

(holding the contempt power is "inherent in all courts"); *cf. In re Search of Fair Fin.*, 692 F.3d 424, 432

(6th Cir. 2012) ("In analyzing the effects of public access to documents filed in search warrant

proceedings, we are mindful that those proceedings are merely one component of the criminal

investigatory process."); *see also Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir.

1989) ("The process of disclosing information to a neutral magistrate to obtain a search warrant,

therefore, has always been considered an extension of the criminal investigation itself.").  Thus,

applications and orders for provider technical assistance, and proceedings related to the enforcement of

those Title III technical assistance orders, enjoy the same statutory presumption under § 2518(8)(b) in

favor of sealing that exists for the Title III wiretap applications and orders in which technical assistance

requests appear.  *See Granick Petition* at 11; *see also Blagojevich*, 662 F. Supp. 2d at 1001 (stating that

Title III "strictly limits" the disclosure of wiretap evidence "as well as the applications, orders, *and*

*related filings associated with wiretaps*") (emphasis added).

> Title III provides that "[a]pplications made and orders *granted*" under Title III shall be sealed.

18 U.S.C. § 2518(8)(b) (emphasis added).  Movants rely on this phrasing to argue that Title III statutory

sealing does not protect "orders *denying* a government's application to wiretap, or orders *denying* relief

to the government seeking to enforce" compliance with a Title III technical assistance order.

Washington Post Mot. at 7-9.  However, the Title III materials at issue all arise directly and derive from

enforcement of orders *granted* by this Court under Title III authorizing interception and requiring

provider technical assistance.  *See* 18 U.S.C. § 2518(4).  The fact that the Court might have denied ███

███████████████████████ is of no moment.  The words "orders granted" in Section 2518(8)(b)

are simply the grammatical parallel to "[a]pplications made."  The use of two different verbs – "granted"

and "made" – reflect that "applications" and "orders" have different authors; applications are "made" by

the government, while orders are "granted" by a court.  Under movants' reading, this grammatical

choice means that the Government risks disclosure each time it entrusts confidential and sensitive

information about surveillance capabilities or other investigative details with the court, because under

1  movants' reading only orders granting applications may remain under seal.  That reading is inconsistent

2  with Congress's larger goal of protecting Title III materials, and with common sense.  Congress

3  recognized that confidential information about investigations and surveillance capabilities must be

4
   protected, and that need for protection does not vanish when the sensitive information appears in a

5
   different Title III document.

6

7  **II.      THE FIRST AMENDMENT DOES NOT ENTITLE MOVANTS TO THE**
   **UNSEALING OF TITLE III MATERIALS**

8
       Because the records movants seek to unseal are Title III materials arising directly from Title III

9
10 applications and orders, movants' claims of a qualified First Amendment right of access must fail.  No

11 qualified First Amendment right of access attaches to Title III materials.

12     The First Amendment protects a qualified "right of access to criminal proceedings."  *Press-*

13 *Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enter. II*); *see also Press-Enter. Co. v.*

14 *Superior Court*, 464 U.S. 501 (1984) (*Press-Enter. I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S.

15 596, 603 (1982).  However, "there is no right of access which attaches to all judicial proceedings, even

16 all criminal proceedings."  *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz.*, 156 F.3d 940,

17
18 946 (9th Cir. 1998) (citing *Times Mirror Co.*, 873 F.2d at 1217 (no right of access to pre-indictment

19 warrants)).  Accordingly, "[t]he Supreme Court has established a two-part test for determining whether a

20 [F]irst [A]mendment right of access extends to a particular kind of" proceeding or document.

21 *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1465 (9th Cir. 1990).

22 First, a court "must decide whether the type of proceeding at issue has traditionally been conducted in an

23
   open fashion."  *Id.*  Second, a court "must determine whether public access to the proceeding would

24
25 serve as a curb on prosecutorial or judicial misconduct or would further the public's interest in

26 understanding the criminal justice system."  *Id.*

27     "This two-part test is commonly referred to as the 'experience and logic' test."  *United States v.*

28 *Doe*, 970 F.3d 991, 997 (9th Cir. 2017).  Generally, "[i]f a proceeding fulfills both parts of the test, a

qualified First Amendment right of access arises." *Phoenix Newspapers, Inc.*, 156 F.3d at 946.  But, in some circumstances, "logic alone, even without experience, may be enough to establish the right." *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008); *see also Phoenix Newspapers, Inc.*, 156 F.3d at 948.

Movants' request fails both prongs of the experience and logic test.  No history of open public access exists for materials directly arising from Title III applications and orders.  Nor do movants offer any public policy reason more compelling than Congress's preferred policy of privacy and confidentiality concerning Title III materials, and the Government's compelling interests in protecting the criminal investigative process, including sensitive investigative techniques and surveillance capabilities.  Accordingly, no qualified First Amendment right of access attaches to the materials movants seek.

### A.   There Is No Historical Tradition of Open Public Access to Title III Materials

Although not explicit in the text of the First Amendment, the Supreme Court has recognized a qualified First Amendment right of access for the public to attend criminal trials.  *See Press-Enter. II,* 478 U.S. at 7; *Globe Newspaper Co.*, 457 U.S. at 603-06.  This qualified right arises from two features of criminal trials. *Globe Newspaper Co.*, 457 U.S. at 605-06.  First, "throughout its evolution, the trial has been open to all who care to observe." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564 (1980) (plurality).  "[T]his unbroken, uncontradicted history, supported by reasons as valid today as in centuries past," led the Supreme Court to conclude that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Id.* at 573; *see also Globe Newspaper Co.*, 457 U.S. at 605-06.  Second, "the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole" because "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process," "fosters an appearance of fairness," and "permits the public to participate in and serve as a check upon the judicial

process—an essential component in our structure of self-government." *Globe Newspaper Co.*, 457 U.S. at 606; *accord Press-Enter. II*, 478 U.S. at 8-9.

Applying those two considerations, the Supreme Court has found a First Amendment right of access to voir dire, *Press-Enter. I*, 464 U.S. at 505-13, and to the transcript of a "preliminary hearing" in a criminal case that "function[ed] much like a full-scale trial," *Press-Enter. II*, 478 U.S. at 7. The Ninth Circuit has also found a qualified First Amendment right of access to plea agreements and related documents, *Oregonian Publ'g Co.*, 920 F.2d at 1466, as well as presentence reports, *CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 826 (9th Cir. 1985), and in-court sentencing proceedings, *Doe*, 870 F.3d at 997.

But the Supreme Court has also recognized that "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of governmental operations that would be totally frustrated if conducted openly." *Press-Enter. II*, 478 U.S. at 8-9. The grand jury system presents a "classic example" of a proceeding that demands secrecy, and to which no qualified First Amendment right of public access attaches. *Id.* at 9 (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)). Proceedings arising under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, offer a second example, because they "can be likened to grand jury proceedings." *In re Application of the United States of America for an Order pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 292 (4th Cir. 2013) [hereinafter *Appelbaum*]. "In fact, they are a step removed from grand jury proceedings, and are perhaps even more sacrosanct." *Id.*; *see also Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 300 F. Supp. 3d 61, 90-91 (D.D.C. 2018) (*Leopold I*) (drawing analogy between SCA warrants and grand jury subpoenas, for which "[n]o historical tradition of public access" exists). "[S]ecrecy is necessary for the proper functioning" of criminal investigations in these phases of proceedings, and "openness [would] frustrate the government's operations." *Appelbaum*, 707 F.3d at 292.

Congress provided even greater protection against public disclosure of Title III materials than for materials related to search warrants or SCA process. Should wiretap materials such as those sought here be disclosed, the Government's use of this critical investigatory tool could be completely frustrated, both in this investigation and in other investigations ███████████████████████████ ███████ *Accord Leopold I*, 300 F. Supp. 3d at 87 ("The SCA . . . does not exist in isolation, but is nestled between the PRA and wiretap statute within a statutory framework that broadly prioritizes law enforcement's need for secrecy over the public's interest in transparency."); *cf. Crowe v. Cty. of San Diego*, 210 F. Supp. 2d 1189, 1195-96 (S.D. Cal. 2002) (where the court "gained sensitive, intimate knowledge of [an ongoing] criminal investigation" as a result of meetings among the court, the sheriff's office, and the attorney general's office to monitor a criminal investigation to determine whether to stay discovery in a civil case, no historical basis supported a right of public access to transcripts of those meetings).

Other courts have expressly and consistently found that no tradition of open public access exists for materials directly related to Title III applications and orders. The Second Circuit concluded that there was no history of access because wiretap applications were not created until 1968, and that "since the time of their creation in Title III, have been subject to a statutory presumption *against* disclosure." *New York Times*, 577 F.3d at 410. The court noted that "there is no question that the public and the press are not permitted to attend the *ex parte*, *in camera* proceedings where wiretap applications are presented to a district judge." *Id.* Likewise, in *Blagojevich*, a court in the Northern District of Illinois determined that there was "no historical tradition of open public access to Title III materials." 662 F. Supp. 2d at 1004. The *Blagojevich* court rejected the media intervenors' argument that a First Amendment right of access attaches to Title III applications and orders and to ancillary Title III documents, such as "reports" and "instructions submitted and issued pursuant to Title III," finding that disclosure of Title III materials is permissible only in accordance with the statute's provisions. *Id.* A court in the Southern District of California similarly concluded that "no historical tradition of open

public access to Title III materials" exists. *United States v. Inzunza*, 303 F. Supp. 2d 1041, 1045-46 (S.D. Cal. 2004) (denying newspaper intervenor's motion to obtain access to sealed records, concluding that no "qualified First Amendment right of public access attaches to Title III wiretap materials and search warrant affidavits following the return of indictments but prior to a substantive challenge to those materials"). The Title III materials at issue in *Inzunza* were submitted under seal in support of the Government's response to defendants' discovery motions concerning claims of possible government misconduct. *Id.* The *Inzunza* court recognized that "[d]isclosure of Title III materials is permissible only under limited circumstances" set forth in the statute; thus, "the only lawful way" sealed Title III materials could be made public under the statute was through admission "into evidence at a criminal trial or at a suppression hearing." *Id.* at 1046.

Proceedings to enforce Title III technical assistance orders, like the "applications, orders, reports, and instructions submitted and issued pursuant to Title III" in *Blagojevich*, may be unsealed and disclosed only as provided by the statute, and as discussed below, movants cannot satisfy the narrowly tailored statutory requirements for unsealing and disclosure here. 662 F. Supp. at 1004; *see Granick Petition* at 11 (stating that technical assistance applications "implicate the same privacy or confidentiality concerns at issue with all wiretap applications"). Accordingly, there is no historical tradition of open public access to the Title III materials movants seek that supports finding a First Amendment right of access.

### B.   *"Logic" Does Not Support a First Amendment Right of Access to Title III Materials*

Nor does logic support public access to the Title III materials movants seek. Indeed, logic undercuts finding any such right. "[P]ublic access would not play a significant positive role" in Title III proceedings to enforce a Title III technical assistance order. *Cf. Fair Fin.*, 692 F.3d at 431; *Crowe*, 210 F. Supp. 2d at 1197 (finding that public disclosure of transcripts containing information gathered during a criminal investigation and disclosed to the court could not "play a positive role in the investigatory

1   process or in providing a fair criminal trial" for the defendant). After a judge authorizes a Title III

2   wiretap, routine disclosure of information contained in those application materials and any subsequent

3   proceedings to enforce a service provider's compliance with a Title III technical assistance order, would

4   be harmful.

5       For example, in *Fair Finance*, the Sixth Circuit found that routine disclosure of search warrant

6   information would be harmful because warrant applications ordinarily "detail the government's

7   evidence of criminal activity," "identify information sources, such as *wiretaps* and undercover

8   operations, the utility of which will be compromised by disclosure;" may "reveal the government's

9   preliminary theory of the crime being investigated," and "could alert others" who may be suspects,

10  "caus[ing] them to destroy evidence or to flee." 692 F.3d at 432 (emphasis added). The same is true for

11  Title III materials—disclosure of information contained in those documents would likely detail the

12  Government's evidence of criminal activity, identify sources of information, reveal the Government's

13  theory of the crime being investigated, or identify other targets of the investigation. *See also*

14  *Appelbaum*, 707 F.3d at 291-94 (finding no First Amendment right of access to 2703(d) orders, stating,

15  "Section 2703(d) proceedings consist of the issuance of and compliance with §2703(d) orders, are *ex*

16  *parte* in nature, and occur at the investigative, pre-grand jury, pre-indictment phase of what may or may

17  not mature into an indictment"); *Granick Petition* at 11-17 (finding no First Amendment right of access

18  to unseal orders under the SCA or Pen Register Act, because even at the post-investigative stage,

19  disclosure could compromise future investigations) ████████████████████████████

20  ██████████████████████████████████████████ Thus, such

21  disclosure may threaten investigations and force the Government "to be more selective in the

22  information it disclose[s]" when seeking and enforcing Title III technical assistance orders "in order to

23  preserve the integrity of its investigations." *Fair Fin.*, 692 F.3d at 432. Here, disclosure of sensitive

24  investigative techniques and capabilities would negatively affect law enforcement's ability to investigate

1   violent gangs and other criminal conspiracies ███████████████████████████████

2   ████████████████████████████████████████████

3

4       Consistent with that analysis, courts have found that logic does not support a qualified First

5   Amendment right of access to Title III materials. *New York Times*, 577 F.3d at 410; *Blagojevich*, 662 F.

6   Supp. 2d at 1004; *Inzunza*, 303 F. Supp. 2d at 1047-50. Specifically, in both *New York Times* and

7   *Blagojevich*, the courts found that the media parties did not offer any compelling reasons why their

8   preferred public policy interests— monitoring the Government's use of wiretaps and potential

9   prosecutions of public officials, the fair administration of justice, or the dissemination of news — were

10  more compelling than Congress's preferred policy of favoring confidentiality and privacy for Title III

11  materials as provided in the statute. *See New York Times Co.*, 577 F.3d at 410; *Blagojevich*, 662 F.

12  Supp. 2d at 1004. The Northern District of California magistrate judge in *Granick Petition* recently

13  applied the reasoning set forth in *New York Times* and *Blagojevich* to Title III technical assistance

14  applications, finding that petitioners failed to establish a qualified First Amendment right of access to

15  such Title III materials because they "failed to explain why their preferred public policy outweighs

16  Congress's preferred policies." *Granick Petition* at 11.

17      Similarly here, movants have failed to justify why their preferred public policy – public

18  discussion of Government surveillance efforts in criminal investigations – outweighs the statutory

19  presumption against disclosure of the Title III materials movants seek and the interests that inform that

20  presumption. *See Inzunza*, 303 F. Supp. 2d at 1047-50 (finding that media intervenor failed to show

21  how unsealing the Title III materials "plays a positive role with respect to the discovery motion" at

22  issue). Likewise, movants' preferred public policy is less compelling than law enforcement's interest in

23  protecting the criminal investigation process. Accordingly, movants have failed to establish a qualified

24  First Amendment right under the logic prong.

### C.   Even a Qualified First Amendment Right Would Not Justify Disclosure Here

Even if the Court were to determine that a qualified First Amendment right of access attaches to the Title III materials movants seek, unsealing and disclosure is not justified.

"Where the public has a qualified First Amendment right of access, 'criminal proceedings and documents may be closed to the public without violating the [F]irst [A]mendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'" *Doe*, 870 F.3d at 998 (quoting *Oregonian*, 920 F.2d at 1466); *see also Times Mirror Co.*, 873 F.2d at 1211 n.1 ("the public can still be denied access if closure is necessitated by a compelling government interest, and is narrowly tailored to serve that interest" (internal quotation marks and citation omitted); *Inzunza*, 303 F. Supp. 2d at 1045 ("In the context of disclosure of Title III intercepts, *Press-Enter. II* requires the court to 'balance the public's right of access against the privacy and fair trial interests of defendants, witnesses and third parties.'") (quoting *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989)).  This case satisfies those three substantive requirements.

First, the Government has a "compelling interest in preserving the secrecy of law enforcement techniques." *United States v. Corces*, No. 92-28-CR-T-17B, 1997 WL 447979, at *9 (M.D. Fla. 1997), *aff'd*, 152 F.3d 934 (11th Cir. 1998). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These are

1  compelling reasons to maintain the Title III materials at issue under seal. *See Crowe*, 210 F. Supp. 2d at

2  1200.

3  ██████████████████████████ unsealing would harm these compelling

4  government interests. Where granting public access will "disclose facts that are otherwise unknown to

5  the public," potential harm may result to the investigation. *Cf. Virginia Dep't of State Police v.*

6  *Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) (concluding that government's interest in ongoing

7

8  murder investigation failed to overcome a qualified First Amendment right of access because most of

9  the information under seal was already public knowledge). Courts have recognized that "[p]ublic

10  access" to certain ██████████████████████████████

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████ Here, ████████████████

16  ██████ the details in the materials sought ████████████████████████

17  ████████████████████████████████████████

18  ██████████████████████████ are not publicly known. Therefore,

19  disclosure of that information could provide a roadmap to individuals seeking to evade the reach of

20  surveillance. Moreover, to the extent the investigation remains ongoing, disclosure of this information

21  could cause targets of the investigation to coordinate their stories, hide evidence by using different

22

23  technology to communicate, or flee the jurisdiction. Thus, granting public access to the Title III

24  materials at issue here would harm the compelling interests in maintaining the secrecy of these

25  proceedings and law enforcement's specific capabilities and limitations, and would harm this and other

26  investigations.

27  That conclusion is not undermined by the very limited disclosure the Government has made of a

28  single detail related to the sealed Title III proceedings before this court. As movants note (ACLU Mot.

at 4), a footnote in the affidavit accompanying the Criminal Complaint stated, without elaboration, that "[c]urrently, there is no practical method available by which law enforcement can monitor these [Voice over Internet Protocol] calls [over the service provider's app]." Compl. at 31-32 n.20.  Courts have recognized, however, that the Government's disclosure of a limited aspect of otherwise sealed matters does not require courts to treat all other aspects of the proceedings as open; nor does such disclosure preclude the Government from seeking to keep those other aspects under seal.  In *Appelbaum*, for example, the Fourth Circuit rejected the contention that the Government's decision to "approve[] the disclosure of the existence of its investigation" by moving for the unsealing of a Section 2703(d) order tipped the balance of interests in the public's favor as to other Section 2703(d) orders and related sealed filings.  707 F.3d at 294.  Likewise, in *United States v. Kwok Cheung Chow* (cited in Washington Post Mot. at 6-8), the court concluded that the privacy interests of individuals named in underlying Title III applications and orders did not disappear simply because those individuals were also identified publicly through an indictment, and that the question for the court was whether redactions were necessary to protect "those individuals' privacy interests [against] further disclosures."  2015 WL 5094744, at *4 (N.D. Cal. Aug. 28, 2015).  The question for the court here is similar: Whether "further disclosures" beyond the barebones statement in the affidavit would implicate the Government's compelling interests in maintaining the secrecy of certain sensitive law enforcement surveillance techniques and details about an ongoing investigation.  Given the yawning gap between the single statement in the affidavit and the detailed information under seal ████████████████████████████████████ this Court should conclude that further disclosure would threaten those compelling interests.

In addition, law enforcement has a compelling interest in protecting the integrity of an ongoing investigation and prosecution, and the methods of investigation used to combat this dangerous criminal street gang and other violent offenders.  *See Virginia Dep't of State Police*, 386 F.3d at 579.  Here, the Government's investigation of the MS-13 cliques operating in Mendota, Los Angeles, and elsewhere across the country has not concluded simply because it has resulted in several indictments and a criminal

1   complaint. A complex investigation such as this is not necessarily over when some defendants have

2   been charged. There remain ongoing and potential investigative steps █████████████████

3   █████████████████████████████████████████████████████████████████████████

4   █████████████████████████████████████████████████████████████████████████

5   █████████████████████████████████████████████████████████

6   █████████████████████████████████████████████████████████████████████████

7   Thus, further investigation continues as a logical part of the criminal process in this case. Should the

8   materials at issue be unsealed, MS-13 members and others could be advised ████████████████

9   of law enforcement investigatory tools, and could change their behavior accordingly. Pursuant to

10  Section 2518(3), law enforcement may only obtain a Title III order when a court determines that

11  alternative investigative techniques would be insufficient to advance the goals of the investigation. The

12  Government's ability to utilize Title III to obtain evidence a court finds to be necessary because

13  alternative investigative techniques would be insufficient, in this case and others, could be severely

14  hampered should any of the Title III materials at issue be unsealed. *See Doe*, 870 F.3d at 1000-01

15

16  (finding that it was error for the district court to "second-guess the government's asserted interest in

17  future criminal investigations and the potential harm" that disclosure "could cause to those

18  investigations") ████████████████████ .

19      Finally, redactions are not a viable alternative to sealing in this case. The Title III materials

20  movants seek are replete with sensitive investigatory information, and, if redacted, little information of

21  public interest would remain.[6] Accordingly, the documents should be kept entirely under seal. *See*

22

23  *United States v. Index Newspapers*, 766 F.3d 1072, 1095 (9th Cir. 2014) (recognizing that "even

24  seemingly innocuous information can be so entangled with secrets that redaction will not be effective");

25  *see also, e.g., Inzunza*, 303 F. Supp. 2d at 1049 n.6 ("The Court notes its concern that any disclosure of

26  the search warrant affidavit prior to a suppression hearing raises the specter of an affidavit so heavily

27

_____

28      [6] As noted above, should the Court reject this argument, the Government reserves the right to
    submit proposed redactions and argument concerning their scope and justifications under seal.

1   redacted as to create confusion and to mislead the public."); *Crowe*, 210 F. Supp. 2d at 1201 (declining

2   to order redactions where "[b]enign information is inextricably intertwined with objectionable

3   information," and it would be impossible to dissect the materials "to parse out individual facts for

4   publication") (citing *Corces*, 1997 WL 447979, at *9); *United States v. Pirk*, 282 F. Supp. 3d 585, 602-

5   03 (W.D.N.Y. 2017) ("[B]ecause the confidential witness information encompasses a large portion of

6   the affidavit and is contained throughout the affidavit, redaction of that information from the affidavit

7

8   would render the affidavit of little use.").

9   **III.    THE COMMON LAW DOES NOT ENTITLE MOVANTS TO UNSEALING OF
         TITLE III MATERIALS**

10

11      ***A.  The Common Law Right of Access Does Not Attach to Title III Materials***

12       "The law recognizes two qualified rights of access to judicial proceedings and records, a

13   common law right 'to inspect and copy public records and documents, including judicial records and

14   documents,' and 'a First Amendment right to access to criminal proceedings' and documents therein."

15   *United States v. Bus. of Custer Battlefield Museum*, 658 F.3d 1188, 1192 (9th Cir. 2011) (internal

16   citations omitted). "The First Amendment is generally understood to provide a stronger right of access

17

18   than the common law." *Id.* at 1197 n.7. While courts have recognized a common law "right to inspect

19   and copy public records and documents, including judicial records and documents," the right is not

20   absolute. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978). The right does not apply to

21   documents that "have traditionally been kept secret for important policy reasons." *Times Mirror Co.*,

22   873 F.2d at 1219. Here, "Title III . . . supersedes any arguable common law right." *New York Times*,

23   577 F.3d at 405; *see also In re Applications of Kansas City Star*, 666 F.2d 1168, 1176-77 (8th Cir. 1981)

24   [hereinafter *Kansas City Star*] (noting that Section 2518(8)(b)'s sealing requirement was intended to

25   protect privacy, the confidentiality of the Government's investigation, and the authenticity of the

26   application and order); *Blagojevich*, 662 F. Supp. 2d at 1002 ("The common law right of access does not

27

28   apply to Title III materials, whose disclosure is addressed in a comprehensive statutory scheme.");

*Granick Petition* at 19 n.4 ("Petitioners do not appear to argue that there is a common law right of access to Wiretap Act materials. . . . The Court would, however, find that there is no common law right of access to these materials.")  Accordingly, this Court should not find any common law right of access to the Title III materials at issue.

### B.  Any Common Law Right of Access Is Outweighed by Potential Harm

As discussed above, materials directly related to Title III applications and orders are generally shielded from the public under constitutional and statutory law.  The common law follows the same rule.  But even if the Court were to conclude that a qualified common law right of access attaches to the Title III materials at issue here, the Government's interest in keeping the materials sealed outweighs movants' interest in disclosure.  *See Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (stating that a finding that records should be accessible pursuant to the common law right of access requires courts to "balance the government's interest in keeping the document secret against the public's interest in disclosure").

The common law presumption of public access may be outweighed by "the competing interests of the public and the party who seeks to keep certain judicial records secret." *Custer Battlefield*, 658 F.3d at 1195 (internal quotations omitted); *see also Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017).  The Ninth Circuit has instructed that "the court must conscientiously balance the competing interests[] of the public and the party" favoring sealing.  *Custer Battlefield*, 658 F.3d at 1195 (internal quotations and alteration omitted); *see also Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).  The balancing of interests turns on "the relevant facts and circumstances of the particular case," *Nixon*, 435 U.S. at 599, and may include: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings, *Metlife*, 865

F.3d at 665 (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)).  Ultimately, a court must "consider[] the relevant facts and circumstances" and determine what "justice . . . requires." *Metlife, Inc.*, 865 F.3d at 665-66.

The relevant facts and circumstances weigh against public access.  Movants have shown no "need for public access" at this time.  Simply showing public interest in the ongoing debate about law enforcement's ability to access certain communications pursuant to lawful process does not suffice.  The public has not previously had access to Title III materials because those documents implicate statutory sealing mechanisms that protect the integrity of law enforcement investigations and the privacy of the persons whose communications may be intercepted.  Moreover, the Government objects to disclosure at this time, and articulates strong bases for maintaining the confidentiality of the materials at issue.  Importantly, the Government has also described the substantial risk of prejudice to the Government's investigation and other investigations, should the public be granted access to the Title III materials at issue.  Accordingly, even if any common law right of access applies to the Title III materials at issue, the balancing of interests in this case militates against unsealing and disclosure.

## IV.   THE NATURE OF THE DOCUMENTS SOUGHT BY MOVANTS DOES NOT ALTER THE ANALYSIS

Movants emphasize that the materials they request are not Title III applications and orders themselves, and that the particular categories of documents at issue—docket sheets, parties' pleadings, and judicial decisions—are subject to a right of access in other settings.  As explained below, neither of those arguments justifies treating the requested materials as falling outside of the Title III framework to which no right of access applies.

### A.   *Proceedings Involving Enforcement of a Sealed Title III Order Are Not Subject to a Right of Access Beyond any Right Applicable to the Underlying Sealed Proceeding*

Movants' argument fails as a threshold matter because courts have generally treated proceedings collateral or ancillary to sealed proceedings as subject to the same right-of-access rules as the underlying sealed proceeding.  Case law in the grand jury context illustrates the point.  Just as Title III proceedings

are sealed by statute, grand jury proceedings are sealed by rule, *see* Fed. R. Crim. P. 6(e), and courts have long recognized that such proceedings are not subject to a right of access under either the First Amendment or the common law. *See Press-Enter. II*, 478 U.S. at 9; *Index Newspapers*, 766 F.3d at 1084. That result does not change whenever disputes arise over compliance with a grand jury's request for evidence from a witness and litigation ensues. *See In re Newark Morning Ledger Co.*, 260 F.3d 217, 222 (3d Cir. 2001) (noting that "the secrecy of grand jury proceedings also extends to collateral proceedings containing grand jury material"). To the contrary, proceedings and pleadings addressing a witness's motion to quash a grand jury subpoena are not subject to a right of access. *Index Newspapers*, 766 F.3d at 1085-88; *accord In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 502-03 (D.C. Cir. 1998). And the same is true if, instead of waiting for a witness to seek relief, the Government moves "to compel [her] testimony." *Dow Jones*, 142 F.3d at 502. No right of access would attach to a hearing on that motion or the parties' filings addressing it. *See id.* at 502-04; *Index Newspapers*, 766 F.3d at 1085-88; *see also United States v. Smith*, 123 F.3d 140, 150 (3d Cir. 1997) (reaching the same conclusion, even where the proceedings at issue "concern[ed] post-trial allegations of government misconduct in criminal cases"). The Ninth Circuit has explained that the scope of protected "matters occurring before the grand jury" encompasses "anything which may reveal what occurred before the grand jury," including "identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Standley v. Dep't of Justice*, 835 F.2d 216, 218 (9th Cir. 1987). Thus, documents related to any matter implicating the grand jury are virtually always filed under seal.

The same analysis should apply to proceedings involving enforcement of Title III technical assistance orders. Any litigation over such orders is likely to involve the very mix of sensitive information that undergirds Congress's decision to require sealing of wiretap applications and orders in the first place—that is, disclosure of private information about the targets of a wiretap and the Government's surveillance of them, as well as closely held information about the progress of

surveillance efforts and the technology underlying those efforts. This case again illustrates the point: the Government's request for relief was tied not to "legal analysis" presented in a vacuum. *See* ACLU Mot. at 2, 24. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

The materials addressing those matters, and the Court's resolution of them, thus involve discussion and analysis inextricably linked to the Title III orders that gave rise to the dispute—orders that are, as discussed above, sealed by statute and have never been subject to a right to access.

It does not affect the outcome tha ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ninth Circuit has recognized that limitations on the right to access in the underlying proceeding carry forward to some degree in the contempt context. Thus, in *Index Newspapers*, the Court of Appeals held that "motions to hold a grand jury witness in contempt" are generally not subject to a right of access under the First Amendment, and that any common law right is outweighed by compelling government interests. 766 F.3d at 1084-85. By the same reasoning, the Government's ████████████████████████████████████████████████

████████████████████████—and any briefing ██████████████—are also not subject to a right of access that would support disclosure.[7] If efforts to enforce Title III orders would be subject to unsealing, the Government would need to weigh the negative effects of disclosure every time a service provider

---

[7] The court in *Index Newspapers* separately concluded that a civil contempt hearing in the grand jury context implicates a limited access right insofar as it does not reveal grand jury information and instead reflects a court's decision confining a recalcitrant witness. 766 F.3d at 1088-90. If analogous reasoning applies in the Title III context, the Court should note that the relevant hearing here was replete not only with information relating to the underlying wiretap orders and other law-enforcement-sensitive information that is properly sealed, but also with proprietary information that the service provider itself may wish to shield from public disclosure. *Cf. In re Iowa Freedom of Info. Council*, 724 F.2d 658 (8th Cir. 1983) (holding that a contempt hearing in a civil case may be sealed to protect trade-secrets information). The presence of these intermingled categories of properly sealed information alongside any aspect of the hearing that could be subject to a right to access makes this a case where redactions are neither feasible nor desirable. *See Index Newspapers*, 766 F.3d at 1095.

refused to comply fully with a Title III order. *See Fair Fin.*, 692 F.3d at 432 ("A further concern arising from public access to search warrant documents is the fact that the government would need to be more selective in the information it disclosed in order to preserve the integrity of its investigations."); *United States v. Gonzales*, 150 F.3d 1246, 1261 (10th Cir. 1998) (explaining that one downside of granting a right of access to sealed Criminal Justice Act materials would be "forcing counsel to be more careful in the information presented to the court for fear of future disclosure"). Such a rule, in turn, would incentivize service providers to refuse compliance, knowing that the Government might not want to risk disclosure of sensitive law enforcement techniques or the details of an investigation by taking action to enforce the Title III order.

### B. The Specific Categories of Materials Sought by Movants Are Not Subject to a Right of Access under the Circumstances of This Case

Movants purport to seek access to a narrow range of documents—sealed docket sheets, judicial rulings, sealing orders, and pleadings—that will reveal "the legal reasoning advanced by the parties," Washington Post Mot. at 2, or at least certain "legal analysis presented in government submissions," ACLU Mot. at 2. Movants then rely on cases holding, in other contexts, that the categories of materials they seek are subject to a right of access. But those cases do not apply to materials that arise from or relate to Title III applications and orders, which are sealed by statute and involve pre-indictment investigative matters.

For example, movants emphasize that docket sheets are subject to a right of access in civil and other types of criminal cases. *See* ACLU Mot. at 15-19. The courts in movants' cited cases reached that result where the type of proceeding described in the docket—such as civil litigation or post-charge criminal cases—were themselves generally subject to a right of access. But courts have reached the opposite conclusion as to grand jury matters and other pre-trial orders authorizing investigative techniques. *See Appelbaum*, 707 F.3d at 295 ("[W]e have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and

1   wiretaps, which are all akin to grand jury investigations, must be publicly docketed."); *In re Sealed*

2   *Case*, 199 F.3d 522, 525-26 (D.C. Cir. 2000) (same as to grand jury ancillary proceedings); *see also In*

3   *re Leopold II*, 327 F. Supp. 3d at 25 n.17 (no right of access to category of "pre-indictment criminal

4   investigative matters," because for such materials, "significant law enforcement, public safety and

5   privacy interests counterbalance the public's interest in transparency"). *But cf. Index Newspapers*, 766

6   F.3d at 1091-92 (ordering unsealing of the docket sheet in a grand jury case that culminated in contempt,

7   where the district court had intended that part of a hearing transcript "be available to the public"). This

8   Court should follow these decisions here and hold that, because the Title III applications and orders

9   were filed in pre-indictment, investigative proceedings to which no right of access attaches, the docket

10  sheets also are not subject to a right of access and need not be disclosed.

11

12          Movants also point out that they are seeking access to a ruling of this Court and that the

13  presumption in favor of access to court records is heightened in the context of a court's orders and

14  opinions. *See* ACLU Mot. at 12-13. The Government does not dispute that proposition as a general

15  matter. But the presumption that movants invoke is not absolute and may be outweighed by compelling

16  reasons in the context of judicial opinions, just as for other judicial records. *See, e.g., Oliner v.*

17  *Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (where parties sought to seal entire proceedings in the

18  district court, including the court's opinion, the district court "properly invoked the 'compelling reasons'

19  standard in considering the sealing request"). Here, for the reasons set forth above, the Government's

20  compelling interests in protecting ongoing investigations and law enforcement sources and methods—

21  including information about the government's surveillance capabilities—justify the continued sealing of

22  a judicial decision addressing the requirements of the Court's technical assistance orders. In addition,

23  disclosure of the Court's opinion would undermine Title III by dissuading the Government from ever

24  seeking to enforce technical assistance orders, as each enforcement effort would require the Government

25  to gamble that its surveillance capabilities would not be revealed.

While these interests may in some cases be accommodated through redactions, *see Custer Battlefield*, 658 F.3d at 1195 n.5, that is not possible here.  Much of the information in the Court's opinion—which was drafted in the context of a completely sealed proceeding—would be subject to redaction, and release of any remaining portions would either "render the document meaningless," *United States v. Harris*, 204 F. Supp. 3d 10, 16 (D.D.C. 2016), or give a misleading impression of the whole, *see United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (declining to require release of portion of a report that, with necessary redactions, was "more likely to mislead than to inform the public"); *cf. In re Motion for Release of Court Records*, 526 F. Supp. 2d at 495 ("The benefits from a partial release of declassified portions of the requested materials would be diminished, insofar as release with redactions may confuse or obscure, rather than illuminate, the decisions in question.").[8]  Under those circumstances, redaction is not feasible.  *See Index Newspapers*, 766 F.3d at 1095.

## V.   MOVANTS CANNOT DEMONSTRATE GOOD CAUSE TO UNSEAL THE TITLE III MATERIALS AT ISSUE

Finally, the ACLU argues that, if Title III's statutory framework governs, it can demonstrate good cause under Section 2518(8)(b) to overcome the statutory presumption and unseal the documents at issue.  *See ACLU Mot. at 20-21*.  That argument lacks merit.

The relevant provision of the statute states: "applications and orders [made under Title III] shall be disclosed only upon a showing of good cause."  18 U.S.C. §2518(8)(b).  Good cause exists only

---

[8] The fact that this Court prepared its opinion in the context of a completely sealed proceeding distinguishes this case from others cited by movants.  For example, the Washington Post points out (Washington Post Mot. at 9) that the Ninth Circuit released a public opinion in *In re Application of the United States for an Order Authorizing the Roving Interception of Oral Communications*, 349 F.3d 1132 (9th Cir. 2003), and that the district court later ordered the docket and briefing unsealed.  But as the Washington Post's own exhibits reveal, the Ninth Circuit published its opinion only after pre-circulating for the parties' review a version "drafted ... with secrecy concerns in mind," Ex. 1 (ECF No. 26), and the district court only ordered unsealing more than five years after the appeal was docketed, Ex. 2, at a time when investigative sensitivities may have been diminished and the Government did not object. Further, while the ACLU separately cites the public briefing over the Government's effort to compel Apple's assistance to unlock an iPhone (ACLU Mot. at 23), the very fact that that litigation was public meant that the district court did not have to grapple with the issuance of an opinion in a case arising from proceedings subject to a statutory sealing requirement.

where the applicant seeking to unseal Title III applications and orders is an "aggrieved person," as defined by 18 U.S.C. §2510(11), and has shown good cause, "but not upon any lesser showing." *New York Times*, 577 F.3d at 406 (citing *Nat'l Broad. Co. v. U.S. Dep't of Justice*, 735 F.2d 51, 55 (2d Cir. 1984) [hereinafter *NBC*]). Movants bear the burden of showing that disclosure of materials directly related to Title III applications and orders is warranted. Disclosure is "not a matter committed to the discretion of the district court, instead it is a matter which statutorily requires a factual finding of good cause." *Kansas City Star*, 666 F.2d at 1176. "Good cause," in turn, "means that, at least minimally, there must be a need for disclosure." *Id.* As explained above, applications and orders for provider technical assistance, and proceedings related to enforcement of Title III technical assistance orders, enjoy the same statutory presumption under Section 2518(8)(b) in favor of sealing that exists for the wiretap applications and orders in which technical assistance requests appear.

Here, movants are not "aggrieved persons" under Title III. 18 U.S.C. § 2510(11) (defining "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed"). Therefore, they lack standing to seek to unseal Title III materials. As the Second Circuit explained, Congress "did not intend this section [Section 2518(8)(b)] to be used as an avenue for discovery by all private litigants in civil cases, unless they are directly aggrieved by the wiretap." *New York Times*, 577 F.3d at 409. To do so would violate congressional intent. *NBC*, 735 F.2d at 54 ("[T]urning Title III into a general civil discovery mechanism would simply ignore the privacy rights of those whose conversations are overheard. . . . [T]his was not the intention of Congress." (citing *United States v. Dorfman*, 690 F.2d 1230, 1233 (7th Cir. 1982)).

In addition, movants have not otherwise shown good cause. That the media and other third parties with an interest in Title III issues seek information regarding a matter movants deem to be of public importance has no relevance. "The desire of the news media to give the public the contents of sealed wiretaps and related papers is not enough in itself to justify a finding of good cause under the

statute." *Kansas City Star*, 666 F.2d at 1176-77 n.12; *see also NBC*, 735 F.2d at 53-55; *New York Times*, 577 F.3d at 408; *cf. Appelbaum*, 707 F.3d at 293-94 (agreeing with lower court's conclusion "that the common law presumption of access to §2703 orders is outweighed by the Government's interest in continued sealing," and rejecting argument that subscribers' interest in "understanding the nature and scope of the government's electronic surveillance of internet activities" and "the publicity surrounding the WikiLeaks investigation . . . justif[ied] its unsealing"). Accordingly, movants cannot show "good cause" to unseal the wiretap materials they seek.

## CONCLUSION

The Government respectfully requests that the Court deny the ACLU's and the Washington Post's Motions to Unseal.

Dated: February 7, 2019

Respectfully Submitted,

McGREGOR W. SCOTT
United States Attorney

KIMBERLY A. SANCHEZ
Assistant United States Attorney

JEFFREY S. POLLAK
Criminal Division
U.S. Department of Justice